S. Percy Crosby, by his next friend, *vs*. Maine Central
Railroad Company.

Penobscot.   Opinion April 29, 1879.

*Exceptions.   Practice.   Evidence.*

A general exception to an entire charge, or to "all the instructions not
included in brackets," will not be sustained when any independent portion
excepted to is sound law.   *Harriman* v. *Sanger*, 67 Maine, 442, and *McIntosh*
v. *Bartlett*, *id.* 130, reaffirmed.

Where a railroad company had employed a band to attend an excursion on
their road, at a fixed sum of money and a ticket for a lady to each member,
and the prepared tickets for the ladies contained the following words only:
"Maine Central R. R., July 30, 1877.   Dexter"—which was different
from common tickets—in an action by a brother of a member of the band
for refusing to carry him on such a ticket: *Held*, that the instruction that
the ticket did not, on its face, entitle him to a passage affords the plain-
tiff no ground for exception.

Also, *Held:* The exclusion of testimony offered by the plaintiff that the plaintiff
was instructed by his father to ascertain, before the excursion party started
in the train, whether he could ride on that ticket affords the plaintiff no
ground for exception.

The judge presiding at a trial has a discretionary power to prohibit the
reading of decisions of the court to the jury, the exercise of which cannot
properly be reviewed on exceptions.

ON EXCEPTIONS.

Case for not permitting the plaintiff to ride on defendants'
railroad train.

The following bill of exceptions was filed :

" It appeared that an excursion train was extensively advertised
by defendants to run from Dexter to Belfast, and thence by
steamer to Islesboro, July 30, 1877.   The Dexter band was
employed by defendants to attend the excursion for the sum of
twenty-five dollars and a ticket for a lady to each member of the
band.   Handbills were posted up previous to the excursion.
Defendants' agent prepared tickets for the ladies of the members
of the band, differing from common tickets—being pieces of
cardboard on which were printed the following words : 'Maine
Central R. R. July 30, 1877. Dexter'—and nothing more.   J.
Willis Crosby, then a minor fifteen years of age, was a member of

the band and a brother of the plaintiff, a minor then seventeen years of age.

" The plaintiff offered to prove by Willis and by the plaintiff that they were specially instructed by their father to ascertain before the excursion party started in the train, whether the plaintiff could ride on the ticket to which Willis was entitled for a lady. The court excluded the evidence.

" The plaintiff and Willis testified that on the morning of the excursion they went to the ticket office at Dexter station, and inquired of some one inside the ticket office about the ticket. They were answered by the person inside, of whom inquiry was made, that the tickets were not there, and he referred them to the conductor, aboard the train. Very soon, before the train started, the conductor, West, came along with the tickets for the ladies of the members of the band. Three witnesses, plaintiff, Willis, and John Herring, testified that they were very near the conductor —within three or four feet; that the conductor said to Willis, ' Have you a lady ? ' that Willis replied, ' No, but I have got a brother ; ' that thereupon the conductor immediately handed Willis one of the tickets before described, and that Willis immediately passed it to his brother, the plaintiff, in presence of the conductor. The conductor testified that he did not remember any such conversation; that he did not hear Willis say that he had a brother; that he neither authorized, nor intended to authorize, nor had any authority to authorize, the plaintiff to ride upon a lady's ticket

" After the train had started, and proceeded three or four miles, the conductor came to the plaintiff who showed him this ticket. Asked him where he got that ticket. Plaintiff testified that he replied to the conductor that he received it of his brother Willis in the conductor's presence. The conductor said the ticket was for a lady, and that he would see the plaintiff again. The conductor testified that he consulted his superior, the general agent, Alden, who was on board the train, and was ordered by Alden to collect fare of the plaintiff or put him off the train. Subsequently, when between Newport and Detroit, he came to the plaintiff and told him he must pay his full fare from

Dexter, $1.50, or he should put him off at the next station, Detroit. Plaintiff contended to the conductor that he had a right to ride on that ticket—refused to pay fare.   At Detroit station, 17 miles from Dexter, the conductor ordered him to leave the train, which he did.

"The charge to the jury was as follows :   [This is an action of the case against the defendant corporation for forcibly expelling the plaintiff from their car.]   There seems to be little dispute about the facts.   [The defendants issued a notice for an excursion. The superintendent contracted with the leader of the Dexter band for their services for the excursion for twenty-five dollars and for a ticket for a lady for each of the members of the band.   If you believe the evidence, such was the contract with the band through their agent, he acting for them, and they are bound by his action, if the manager had authority, as he says he had.   By this agreement the brother of the plaintiff had no right to a ticket for anyone but a lady.   You will consider whether this was not known to the plaintiff and his brother.   So that there should be no mistake, different kinds of tickets were issued, one set for the excursionists, and one set for the ladies, to be given to one of the band.] The writ alleges the plaintiff had a ticket by which he was entitled to be carried on the excursion.   If you believe the evidence, he had no such ticket.   He had a ticket for a lady.   It did not on its face entitle him to a passage.   He had, if you believe the evidence, no right to a passage, unless by virtue of a special contract. For the purposes of this case, I instruct you that, if the conductor agreed with the plaintiff that he might go on a lady's ticket, the plaintiff would have a right to a passage.   But a contract is the assent of two minds.   Both parties must agree to the same thing.   If one party understands the agreement to be one thing, and the other party a different thing, there is no contract.

"Did the defendants' agent expressly or impliedly agree, in violation of his duty, that the plaintiff might ride on this ticket ?   If he did, then the plaintiff has a right of action.   If, on the other hand, the conductor neither expressly nor impliedly authorized the plaintiff to ride on the cars, then the plaintiff was not authorized to ride, and is not entitled to damage, unless undue force and violence were used in removing the plaintiff.

" The plaintiff says he entered the cars ; that West was there with passes in his hand ; that plaintiff's brother was there ; that West asked ; ' Have you any lady ? ' that the reply was ' No ; ' that he had not brought one ; that he passed the ticket to Willis, and Willis to plaintiff. That is plaintiff's testimony. All was, plaintiff received a lady's ticket from his brother. The conductor testifies that he did not notice the presence of the brother ; that he neither authorized, nor intended to authorize, nor had any authority to authorize the plaintiff to ride upon a lady's ticket. Did he do more than give a ticket to one entitled to it ? Now, was there any contract, express or implied ? If none, then the only remaining question is, was the plaintiff removed in an undue, improper manner, and with unreasonable and excessive force and violence ?

" The conductor had a right, it was his duty, to remove a passenger, if he had not the required ticket, nor was he in any way authorized to ride. [The evidence of the conductor and plaintiff does not materially differ as to the facts of the removal. The conductor, shortly after the cars started, called on the plaintiff for ticket,—informed him he had not the proper ticket, and he must pay, and he also called on him again and he declined to pay.]

" If there was a contract, expressed or implied, then what is the measure of damages ? $1.50 would have given him the excursion, and have avoided all the trouble—all mortification. If the conductor was acting in good faith, in the honest discharge of his duty, not maliciously, the plaintiff is entitled only to actual damage. He consulted Alden, his superior, and would have run the risk of losing his place if he had disobeyed him. [If the conduct of the conductor was arbitrary, malicious and unreasonable, you will give the plaintiff reasonable damage for the actual damage sustained, and for further punitory damages for his wounded feelings, mortification, and such damages as would deter the defendants from such conduct, if wrongful.] "

The plaintiff's counsel offered to read to the jury portions of the decisions of this court in *Goddard* v. *Grand Trunk Railway Co.*, 57 Maine, 213, 214, 218 ; also from *Burnham* v.

*same,* 63 Maine 298,—in relation to the liability of railroad corporations as common carriers, but the court would not permit it.

"This offer was made after defendants' counsel had finished his closing argument, and no notice that such authorities would be referred to had been previously given him.

"To all the foregoing rulings and instructions, especially to the rejection of evidence, the refusal to permit the reading from the decisions of this court to the jury,—to all the foregoing instructions except what is included in brackets—especially to the instructions, to what was said by the court as to the right of plaintiff to ride upon that ticket, and to what was said as to a special contract, and as to a contract being the assent of two minds, and all observations of the court bearing upon that matter in its application to this case ; to what was said in relation to the measure of damages, except the portion included in brackets,—in fine, to all the instructions, except what is included in brackets, the plaintiff alleged exceptions."

*J. Crosby,* for the plaintiff.

*Wilson & Woodard,* for the defendants.

BARROWS, J. When learned and diligent counsel, being unable to find in the instructions given by the presiding judge anything which, when specifically stated, they are prepared to affirm is erroneous, resort to general exceptions to the charge, or to all the instructions given upon certain branches of the case, or, as here, "to all the instructions, except what is included in brackets," it may be regarded as reasonably certain that there is nothing of which they have any good cause to complain.

If the full court go far enough to ascertain that the proposition asserted in such exceptions (which is, in substance, that all the instructions thus referred to are erroneous) is not maintained, they ought to overrule the exceptions thus carelessly made up, without definite aim, in the forlorn hope that something or other may thereafterwards be discovered on which to base an argument for a new trial. That this court will so dispose of such bills of exceptions may be considered as settled by the cases of *Harriman* v. *Sanger,* 67 Maine, 442, and *McIntosh* v. *Bartlett, id.* 130.

The sufficiency of these instructions under this rule may as well be tested by an examination of one which the plaintiff makes a special subject of complaint. He objects particularly " to what was said by the court as to the right of the plaintiff to ride on that ticket."

The part " not included in brackets " runs thus : " The writ alleges the plaintiff had a ticket by which he was entitled to be carried on the excursion. If you believe the evidence, he had no such ticket. He had a ticket for a lady. It did not, on its face, entitle him to a passage. He had, if you believe the evidence, no right to a passage unless by virtue of a special contract."

The statement of the case made in the exceptions by the plaintiff's counsel is all that is needed to demonstrate that here was no error. The plaintiff's only claim of right to a passage is based upon testimony from which he seeks to show that the defendants' conductor tacitly agreed that he might ride on the ticket for a lady, to which his brother, as a member of the band accompanying the excursion, was entitled. The ticket was not a ticket for the excursion, as asserted in the writ, but a token of the perquisite bestowed on the members of the band for the use of their lady friends only.

There is no occasion to examine the exceptions to the charge any further. The testimony offered as to the instructions given to the plaintiff and his brother by their father was rightly excluded. It was, *res inter alios*, mere talk not communicated to the defendants, and not competent upon any of the rules of evidence.

Plaintiff's counsel lays most stress in argument here upon his complaint that he was not permitted by the presiding judge to read to the jury extracts from the decisions of this court in certain cases which he had neither cited nor declared his intention to cite, until after the argument for the defendants was finished. The cases bore little, if any, resemblance to the one on trial, beyond the fact that they were suits against railroad companies for alleged torts to passengers on their trains. But, however pertinent they might be, it was a matter addressed to the discretion of the presiding judge to permit or prohibit such use of them as the counsel proposed to make, and the exercise of that discretion cannot properly be reviewed on exceptions.

In the orderly course and conduct of a trial at *nisi prius* it is the privilege and duty of counsel to state to the court and jury the position which he takes upon the questions of law arising in his case, and to enforce such positions when controverted or doubtful, by such arguments and citation of authorities (addressed to the court) as he deems needful and appropriate. But arguments to the jury upon questions of law and the citation or rehearsal of authorities to them are equally out of place, and liable to divert their attention from the real questions with which they are to deal.

The law of the case they are to receive from the judge, whose duty it is to respond to all questions of law raised in the progress of the cause, and to give the jury rules which are to govern them in the consideration of it; and no one who is aware of the liability of the human mind to be misled by vague general analogies and forms of expression applicable, perhaps, to one set of circumstances and totally inapplicable to another set having a general similarity but particular radical differences, will fail to see the necessity of lodging in the hands of him who is responsible for the correctness of the law, by which the jury are to be guided, the power to prevent wrong impressions from being conveyed to them under the guise of authoritative legal decisions. Such power the justice presiding at a trial before the jury unquestionably has, and his determination in the matter and manner of its employment is, and ought to be, final; for he has before him, in the appearance of the witnesses, jury and counsel, better means of judging as to its propriety than any printed report of the proceedings, however perfect, can furnish to us.

*Exceptions overruled.*

APPLETON, C. J., WALTON, DANFORTH, PETERS and LIBBEY, JJ., concurred.