HOWARD O. YOUNG
*vs.*
EDWARD T. CARIGNAN

Cumberland.    Opinion, January 31, 1957.

*Grover G. Alexander,* for plaintiff.

*Oakes & Oakes,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, SULLIVAN, DUBORD, JJ. TAPLEY, J., did not sit.

WILLIAMSON, C. J.   In this action the plaintiff seeks to recover for breach of an oral contract with the defendant wherein the latter promised to make a certain investment in behalf of his son. The case is before us, after verdict for the plaintiff, on motion for a new trial and on exceptions.

In our view the verdict must be set aside for error in a ruling reaching the decisive question of the terms of the contract. The ruling was made in the course of the argument of defendant's counsel to the jury.

On the point in issue the jury found in substance the following:

In May 1951 the plaintiff and the defendant's son purchased a tractor and refrigerator trailer under a conditional sale agreement for $16,500. The plaintiff paid $5,000 in cash to the seller and the plaintiff and defendant's son agreed in writing to pay $5,610.64 in 60 days and to assume a prior claim upon the property held by a Chicago bank in the amount of $5,889.36. The agreement between plaintiff and defendant in substance was that if the plaintiff would enter into business with defendant's son and advance $5,000 toward the cost of the equipment, the defendant within 60 days would invest $5,000 in the business for his son's share by payment on the amount due from the plaintiff and defendant's son to the seller. At the defendant's request, the seller extended the time for payment an additional ten days. The defendant, however, did not make the promised $5,000 payment.

The jury also found: (1) no breach by the plaintiff; (2) a breach by defendant; (3) no waiver by plaintiff of defendant's breach, and (4) damages.

The plaintiff and the defendant differed sharply in their versions of the contract. The defendant testified to the effect that he promised to make the $5,000 payment only in the event he obtained the money from the sale or mortgage of certain houses owned by him, and not otherwise. The plaintiff, on his part, told the jury that the defendant's promise was firm and absolute and the promised payment was in no way conditional upon the defendant's ability to raise the money from particular sources.

If the promise was absolute, as asserted by the plaintiff, then there was a breach by the defendant in his failure to make the payment. On the other hand, if the condition stated by the defendant was not fulfilled, there was no breach by him. The credibility of the plaintiff and the defendant thus became of the utmost significance in the case. What in fact was the agreement turned in large measure upon the evidence of the plaintiff and defendant.

The error complained of arises from the refusal of the presiding justice to permit defendant's counsel to read in argument certain testimony in the case.

The exception reads as follows:

"EXCEPTION 1

Certain testimony of the plaintiff in the previous case (a former trial of the same case) was read to the plaintiff on cross examination in this case and the plaintiff admitted it was his previous testimony. The previous testimony of plaintiff read into this case as it appears and became part of the record in this case is as follows:

Q There was a previous hearing, Mr. Young. In that hearing were you asked this question and

did you give this answer: 'Q and there is no question but that everything was predicated on his selling that house in the first place' 'A. That is right.' Now is that your testimony at the last hearing?

Mr. Alexander: Before the witness answers that question I would like to check and be sure it is identical with the transcript I have.

Mr. Oakes: The question is 'And there is no question but that everything was predicated on his selling that house in the first place.' 'A. That is right.'

Mr. Alexander: Where is that testimony? (Conference between counsel)

Q (By Mr. Oakes) Now is that your testimony in the previous case? A. Yes.

Q Now Mr. Young, did this series of questions and answers occur at the last hearing: 'Q (By Mr. Oakes) One more question, I think. When you first did business with Mr. Carignan, Sr. as you claim was it understood that the money was to come from the sale of the house?' 'A. From the sale of the new house or from the mortgage of the one he was living in that he just built.' 'Q. From the sale of the new house if it could be sold?' 'A. That is right.' 'Q. And otherwise from the mortgage of the house he was living in if he could raise it from that?' 'A. That is right.' 'Q. That is the condition upon which the plan was made up?' 'A. That is what he told me.' 'Is that your testimony at the last hearing? A. It is.'

Robert Oakes arguing the case (for the defendant) led up to this testimony and started to read from the record of the previous case, the words as read into the record in this case as admitted by the plaintiff. The judge presiding refused to allow this testimony to be read. The transcript of the previous hearing was available to both counsel when originally introduced, at which time it was followed in the reading and was likewise available

when about to be read in argument. The record of the incident is as follows:

(Mr. Alexander then argued for the plaintiff and Mr. Robert Oakes for the Defendant. At the close of the defense argument and before rebuttal Mr. Raymond Oakes (also counsel for the defendant) conferred with the Court at the Bench in the presence of Mr. Alexander).

THE COURT: The defendant takes exceptions to the comment by the Court during argument of defense counsel wherein defense counsel had read and was again about to read from what appeared to be the transcript of the July, 1952 hearing, contending that the portion of the transcript which counsel had read and was about to read again had gone into the record in the instant case and was admitted by the witness of the plaintiff and hence was entirely proper. (Exception allowed)"

In his charge the presiding justice touched upon the problem in these words:

"Request No. 9 (by the defendant) reads as follows: 'The ruling that attorney could not read from previous testimony does not prevent you from considering such of that testimony so introduced as any other testimony.' I will give you that instruction. Some of the testimony from the previous case was read into the record of this case. That becomes evidence in this case just like the rest and must be considered by you. Any testimony that may have been read from the transcript of the previous case which was not entered on this record, that transcript not being an exhibit, is not properly before you, if there was any, and I do not say that happened, but any testimony from the previous case that was read into the record of this case becomes a part of this case and you must consider it."

The issue is whether there was abuse of discretion by the presiding justice in prohibiting the reading of the testimony

in argument. There is no error in a discretionary ruling "unless indeed (the justice) has plainly and unmistakably done an injustice so apparent as to be instantly visible without argument." *Goodwin* v. *Prime,* 92 Me. 355, 362, 42 A. 785; *Dupont, Petr.* v. *Labbe, et al.,* 148 Me. 102, 89 A. (2nd) 741. "When the determination of any question rests in the judicial discretion of the trial court, the exercise of that discretion can not be reviewed by an appellate court unless it is made to appear that the decision was clearly wrong or that it was based upon some error in law." *Rioux* v. *Water District,* 132 Me. 307, 309, 170 A. 63. "When some palpable error has been committed or an apparent injustice has been done, the ruling is reviewable on exceptions." *Bourisk* v. *Mohican Co.,* 133 Me. 207, 210, 175 A. 345; *American Oil Co.* v. *Carlisle,* 144 Me. 1, 10, 63 A. (2nd) 676. See also *Gregory* v. *Perry,* 126 Me. 99, 136 A. 354; *Charlesworth* v. *American Express Company,* 117 Me. 219, 103 A. 358; *Munsey* v. *Public Loan Corporation,* 151 Me. 17, 116 A. (2nd) 416.

The discretionary authority of the presiding justice to control argument is firmly established. *Crosby* v. *Maine Central Railroad Company,* 69 Me. 418 (not error to refuse permission to read decisions of the court to the jury) ; *Rolfe* v. *Rumford,* 66 Me. 564 (error to permit counsel, after objection to argue upon asserted facts not in evidence) ; *Mizula and Cherepowitch* v. *Sawyer et al.,* 130 Me. 428, and cases cited, 157 A. 239; 53 Am. Jur., Trial § 460; 88 C. J. S., Trial § 175.

The defendant argues that by the ruling the jury gained the impression that counsel was attempting to present the matter without right and that counsel thereby suffered embarrassment. We find no intimation of improper conduct by counsel in the sense of intended wrongdoing. His integrity was unquestioned. The embarrassment of counsel does not

show in the record and does not seem to us of consequence in reaching a decision.

The defendant makes a third point—that the material "included was germane to the vital issue of the case and was the focal point of defendant's argument." There can be no question, as we read the record, of the outstanding importance of the testimony in question. As we have indicated, if the defendant could shatter the plaintiff's evidence upon the terms of the contract, the plaintiff would fail to make out a case.

The defendant sought absolute accuracy in his argument. He could have commented on the testimony and such comment within bounds of fairness could not be denied. Here, in a series of questions and answers *in the testimony in the case*, we may readily believe he centered his argument.

The testimony which he wished to read is not long. It is not, so far as it has been argued to us, incomplete. There is no suggestion that it would have been unfair for this reason.

The defendant wished to do what is common practice in argument, that is, to make certain that he did not misquote or go beyond the evidence in the case. The desirability of accuracy in commenting upon the testimony in question cannot be denied. In light of the situation then existing, the justice erred within the rules above described.

The prejudice to the defendant's case by the ruling is plain. Nor was the prejudice cured by the justice's statement in charging the jury. We are unable to escape the conclusion that the force of the testimony was clearly and seriously weakened in effect through the ruling of the presiding justice.

We are aware that in nearly all of the cases presenting a like problem, the courts have found no prejudicial error in

giving or refusing permission to read testimony in argument. Typical examples are *Podrat* v. *Narragansett Pier R. Co.* (R. I.) 78 A. 1041 and *Wells Fargo & Co. Express* v. *Baker Lumber Co.* (Ark.) 171 S. W. 132.

In *Wells Fargo & Co. Express*, holding no error in refusing permission, the Arkansas Court said, at page 135:

"The remarks of the court in making its ruling were only tantamount to saying that the court would not permit the time to be consumed in reading the deposition more than once. It was the duty of the trial judge to see that the order of procedure was observed in the manner of introducing testimony and the arguments made before the jury, and this court will not reverse for the ruling of the trial court on these questions of procedure unless it appears that there is an abuse of the court's discretion which results in prejudice to the party making the objection. While the court might very properly have permitted the counsel to read the extracts he desired to read in order to show that he was stating the testimony correctly, the court did not err in refusing this permission and in thus leaving the matter to the recollection of the jury who had heard the reading of the deposition."

In *Podrat*, the Rhode Island Court, in holding no error in permitting the reading, said at page 1044:

"It appeared in argument before us that the testimony read in argument was no other than that previously read in evidence without objection. Counsel for defendant seems to think it was taking an unfair advantage of his client to read evidence in argument; but such a matter may safely be left to the discretion of the trial judge. Counsel in argument may, and often do, say to the jury that they do not wish to color or distort the meaning of a witness in giving certain testimony, and for the purpose of treating him with the utmost candor and consideration they will give his exact language verbatim et literatim. The counsel may do this

from his own notes, or from the stenographer's notes, when obtainable, or by reading from a transcript of testimony, or from depositions, and there is no impropriety in so doing, as long as the same is sanctioned by the presiding judge, who would doubtless check any attempt to take an undue advantage of the situation."

In *Gagush* v. *Hoeft* (Mich.) 171 N. W. 437 (affirmed on rehearing 175 N. W. 170), the Michigan Court stated the principle in language applicable in the instant case. The Court said, at page 439:

"It was error for the court to refuse to counsel for the appellant the right to comment in his argument upon certain alleged contradictions in the testimony given upon the former and upon this trial. Using the testimony given on the former trial, counsel had properly interrogated the witnesses for appellee upon cross-examination, and had secured certain admissions with respect thereto. In argument he sought to return to the matter and to call the attention of the jury to the alleged discrepancies and contradictions of testimony. For this purpose he used, as he had used in interrogating the witness, the record of the testimony given on the first trial. This he was refused permission to do. No one claimed, or now claims, that he made improper use of the testimony or sought to call attention to matter not used in cross-examining the witnesses. What he sought to do was, in substance and effect, this: To say to the jury that the witness admitted having testified on the former trial as follows — reading from the minutes of the testimony given on the former trial matter to which the attention of the witness had been directed — and upon this trial she testified differently. In short, he was directing attention to testimony given at the instant trial. But the court was of opinion that he should either have produced a transcript of the testimony given upon the last trial or have had the reporter read whatever was desired from his notes. The practice pursued by counsel is not an

uncommon one, and not improper; it being always the duty of the trial court to see that an unfair argument is not indulged in. Whether for this error, this limiting of the privilege of argument, the judgment should be reversed, depends upon whether we can say that prejudice did not result."

The court held the error was not prejudicial and overruled the exception.

The cases, however, are of little help in reaching a conclusion. The value of a case in this field as a precedent in other situations is limited. Compare the rule in interpretation of wills. See *New Eng. Trust Co., et al.* v. *Sanger, et al.*, 151 Me. 295, 303, 118 A. (2nd) 760.

We must take the precise facts in the case at bar and determine whether there has been error of law. In our opinion the denial of permission to read the particular testimony destroyed in large measure its worth. This necessarily must have reacted upon the jury to the prejudice of the defendant. Nor do we find that the error was corrected, or the damage softened or removed by the judge's charge.

We have had the unquestioned advantage, not open to the presiding justice at trial, of studying the entire record with the benefit of briefs and oral arguments of counsel. Our research and consideration have been undertaken without the demands and interruptions of trial.

In view of our decision on the issue discussed, it becomes unnecessary to consider the remaining exceptions and the motion. We do not choose to decide issues which may not arise on a new trial.

The entry will be

*Exception sustained.*