George R. CHENELL and Trudylynn
Chenell (Young)

v.

· WESTBROOK COLLEGE.

Supreme Judicial Court of Maine.

Aug. 16, 1974.

Pierce, Atwood, Scribner, Allen & Mc-Kusick, by Ralph I. Lancaster, Jr., Portland, for plaintiffs.

Mahoney, Robinson, Mahoney & Norman, by Lawrence P. Mahoney, Portland, Murray, Plumb & Murray, by Peter S. Plumb, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

This case is before us on appeal by the defendant.

A trial resulted in a jury verdict in favor of the plaintiff.

A motion for new trial was seasonably filed by the plaintiff. 'On order of a Justice of the Superior Court granting such motion, a new trial has been had.

That the new trial was error free was conceded by the defendant at oral argument.

We are concerned then only with the question as to the propriety of the action taken by the presiding Justice at the conclusion of the first trial by jury.[1]

We deny the appeal.

At the time this cause of action arose Trudylynn Chenell Young[2] was a professional dancer.

In 1968 while a student at Westbrook Junior College in Portland she received serious injury to her leg when a large cabinet fell on her.

By complaint dated February 8, 1971, this action to recover damages for personal injuries received by her, and by her father for medical expenses incurred by him on her behalf, was commenced.

A trial of the case was by jury. The claim was premised upon our so-called *"comparative negligence"* statute. (14 M. R.S.A. § 156)

The jury's finding was that the total damage sustained by plaintiff was $7,500.-00.

It also found there was fault on the plaintiff's part causally contributing to the injury she received and the damage award was reduced to $5,000.00 because of her contributory fault.

Seasonably following the trial a motion for new trial was addressed to the presiding Justice. One of the grounds claimed for entitlement thereto was that *"the damages awarded to Plaintiff Trudilynn Chenell are grossly inadequate and reflect a compromise by the jury on the question of liability."*

The presiding Justice, after hearing, entered an order which provided that *"new trial granted on all issues for inadequate damages indicating a compromise on the issue of liability."*

A new trial was subsequently had. This trial resulted in a finding by the jury that the entire causal fault for the damages sustained was upon the defendant. Dam-

---

1. The granting of a motion for new trial is not appealable as an interlocutory order. Any complaints in reference thereto must await the new trial. 2 Field, McKusick & Wroth, Maine Civil Practice, 2d, § 73.1, pp. 156–159,

Bernat v. Handy Boat Service, Inc., Me., 239 A.2d 651 (1968).

2. Plaintiff was married after the action was commenced.

ages were assessed for the plaintiff in the sum of $53,000.00.

The defendant's appeal challenges the correctness of the action taken by the Justice presiding at the first trial in setting aside the verdict returned by the jury.

■ In deciding the correctness of the action taken by the presiding Justice we cannot substitute our judgment for .his. His order may be reversed by us only *"in the event that a clear and manifest abuse of discretion on the part of the trial judge is shown."* MacLean v. Jack, 160 Me. 93, 198 A.2d 1 (1964).

We commence our evaluation of defendant's claim that the trial Court manifestly abused his discretion by briefly stating the responsibility of a trial Judge when presented with a motion for a new trial.

■ It is the duty of the Court in the case of excessive or inadequate damages to set aside the verdict if the jury disregards the evidence or acts from passion or prejudice. Chizmar v. Ellis, 150 Me. 125, 107 A.2d 538 (1954); Cosgrove v. Fogg, 152 Me. 464, 54 A.2d 538 (1947).

■ In determining whether the jury has disregarded the evidence or acted from passion or prejudice, the Court must view the evidence most favorable to the conclusion the jury's finding was correct. Chizmar v. Ellis, supra.

■ The trial Court may not substitute his judgment as to the credibility of witnesses for the judgment of the jury. State v. Call, Me., 322 A.2d 64 (1974).

"As a general rule, the parties are entitled to the judgment of the jury and not of the court upon that question. [Amount of damages] There are cases, to be sure, where the court will intervene; but those cases will be governed by the evidence and circumstances of each particular case. The court will not, however, set verdicts aside on the ground that the damages are excessive or inadequate unless it is apparent that the jury acted under some bias, prejudice or improper influence, or have made some mistake of fact or law." Cayford v. Wilbur, 86 Me. 414, 416, 29 A. 1117, 1118 (1894).

■ Summed up succinctly, it may be said the judgment of a jury as to the amount of damages should be disturbed by the trial Judge only if he is satisfied reasonable men will agree that the jury's finding is irrational on the basis of the evidence considered in a light most favorable to the party against whom the motion to set aside the verdict is pressed.

■ The threshold question before us is: In determining that the amount of damages awarded by the jury was inadequate, did the trial Court in exercising its power to set aside the verdict do so for reasons which are clearly untenable or in a way that is clearly unreasonable or inexplicable?

As we earlier observed, plaintiff was trained to become a professional dancer. She did, in fact, at one point become a member of that remarkably precise dance team known as the *"Rockettes."*

The uncontroverted medical testimony compels the conclusion that her right to hope that she would one day become a second Isadora Duncan died when the 475 pound cabinet came crashing down and pinned her legs to the floor of the gymnasium at Westbrook College.

That prior to this accident plaintiff had *"definitely outstanding"* ability as a dancer appears not to be in question.

That an arthrotomy performed in October, 1970, disclosed a tearing of the medial meniscus, a condyle fracture and resulting chondromalacia, is not denied. A permanent impairment of her leg resulted from the injury so received.

That she was caused to experience pain and suffering would be obvious even if she had not so testified.

On two occasions she was hospitalized, once for 3 days and on the occasion of surgery for a period of 1 week. Her leg was in a cast from October, 1970, through January of 1971, and locomotion was possible only through the use of crutches during that period.

That a finding that this damage would be translated into money terms in the sum of $7,500.00 is so clearly wrong that the conclusion cannot be left to stand.

The presiding Justice, who had the benefit of observing the witnesses as they testified, concluded the jury's finding was irrational and could not consonant with justice become the final adjustment of the rights of the parties, vis-a-vis, one the other.

We certainly cannot say that the defendant has demonstrated a manifest abuse of discretion.

It becomes important then as the next step to determine if the evidence justifies the presiding Justice's conclusion that the inadequate verdict demonstrated *"a compromise by the jury on the question of liability."*

■ This is so because a new trial may not be granted solely on the ground that the damages are inadequate until the defendant has first been given an opportunity to accept an additur of such amount as the Court judges to be reasonable. Rule 59(a), Maine Rules of Civil Procedure.

No opportunity for additur was offered the defendant in this action before the granting of the motion for a new trial.

■ The granting of a motion, absent such opportunity for additur, is legally proper only when there is sustainable finding not only that the damages are inadequate but also that such inadequacy reflects a compromise on the part of the jury. Bergeron v. Allard, 152 Me. 297, 128 A.2d 848 (1957); Conroy v. Reid, 132 Me. 162, 168 A. 215 (1933); Leavitt v. Dow, 105 Me. 50, 72 A. 735 (1908).

In Simmons v. Fish, 210 Mass. 563, 97 N.E. 102 (1912), Chief Justice Rugg, writing for that Court quoted Cooley, writing for the Michigan Court, Goodsell v. Seeley, 46 Mich. 623, 10 N.W. 44, as follows:

"It is no doubt true that juries often compromise . . . and that by splitting differences they sometimes return verdicts with which the judgment of no one of them is satisfied. But this is an abuse. The law contemplates that they shall, by their discussions, harmonize their views if possible, but not that they shall compromise, divide and yield for the mere purpose of an agreement. The sentiment or notion which permits this tends to bring jury trial into discredit, and convert it into a lottery."

Later in the same opinion Chief Justice Rugg said:

"But a verdict which is reached only by the surrender of conscientious convictions upon one material issue by some jurors in return for a relinquishment by others of their like settled opinion upon another issue and the result is one which does not command the approval of the whole panel, is a compromise verdict founded upon conduct subversive of the soundness of trial by jury. The jury room cannot be entered in order to ascertain what has transpired there. Its deliberations are in secret, and ordinarily cannot be made the subject of testimony by jurors. (Citation omitted) What went on there may be learned by other sources. (Citation omitted) It is not infrequently possible to determine with some approximation to accuracy what went on there from the result produced. This is such a case."

We think this too is such a case.

Throughout the trial it was clear the issue of liability was hotly contested. At one point during the trial, counsel for the defendant confided to the Court and to plaintiff's attorney that in his view the real issue in this case is one of liability and again that " . . . *the damage*

*problem is much less a serious problem than the issues of liability."*

We note also that after the case had been submitted, the jurors returned to the court room from the jury room, at their request, and a note on which was written the question: *"The only witness was Rose Ouellette. Why wasn't there a deposition from her describing what happened?",* was handed the Court.

We think the presiding Justice would clearly not be abusing his discretion if he concluded that the result of the jury's deliberation demonstrated at least *"with some approximation to accuracy what went on there."* (In the jury room).

█ A careful review of all the evidence in the case causes us to conclude the defendant has not sustained the burden which it has to demonstrate that the action of the Justice below in setting aside the verdict of the jury and granting the motion for new trial constituted an abuse of discretion.

The entry must be,

Appeal denied.

All Justices concurring.