John T. ECKENRODE

v.

HERITAGE MANAGEMENT CORPORATION.

Supreme Judicial Court of Maine.

Argued March 15, 1984.

Decided July 23, 1984.

Collins, Crandall & Hanscom, P.A., Stephen W. Hanscom (orally), Rockland, for plaintiff.

Eaton, Glass, Marsano & Woodward, Francis C. Marsano, Belfast, Strout, Payson, Pellicani, Cloutier, Hokkanen, Strong & Levine, Joseph M. Cloutier, Esther R. Barnhart (orally), Rockland, for defendant.

Before NICHOLS, ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

VIOLETTE, Justice.

On May 25, 1983, a jury awarded John T. Eckenrode, $14,825.79 in damages on a breach of employment contract suit brought against Heritage Management Corporation ("Heritage"). Heritage appeals from the judgment entered by the Superior Court, Knox County, in the amount of the jury verdict, claiming that the court committed three errors in instructing the jury that effectively denied it a fair trial. Heritage also claims that its right to a fair trial was prejudiced by improprieties it alleges occurred in the selection and seating of the jury. Finally, Heri-

tage claims that the damages awarded are excessive. We affirm the judgment as to liability on the contract claim. Because we find error, however, on the award of damages, we vacate the judgment as to that issue and order a new trial on damages unless plaintiff accepts a remittitur to $9,020.00.

## I. Facts.

Eckenrode was employed by Heritage and its predecessor in ownership as a recreation director and golf professional at the Samoset Resort Inn in Rockland from May 1977 until mid-January 1979. Plaintiff also operated a pro shop at the resort and received a commission on sales. He worked at the resort, however, only until December 16 or 17, 1978, at which time he requested and was given permission to take a leave of absence for up to eight weeks because of medical problems. Plaintiff was advised by William Manger, the general manager of the resort that his job would be waiting for him when he was able to return to work. When plaintiff contacted Mr. Manger, however, approximately four weeks later to advise him that he was medically fit for work, the manager told plaintiff that his job had been eliminated. Plaintiff then commenced the instant suit.

In his complaint, plaintiff alleged that on October 13, 1978, he and Heritage entered into a contract of employment running from October 1, 1978, to October 1, 1979, at a salary of $200.00 per six day work week plus "additional considerations." The "additional considerations," according to the complaint, included commissions from the pro shop and "miscellaneous fringe benefits," including meals. Plaintiff attached to his complaint and introduced at trial a copy of a memorandum dated October 13, 1978, authored by Milos Hamza, the presi-

dent of Heritage Management Corporation, and addressed to Mr. Manger stating, in part, that Eckenrode was to work through the winter of 1978–79, and would finish his duties at the end of October 1979.[1]

At trial, Eckenrode testified that the terms of his contract arose out of discussions he had with Mr. Manger and Mr. Hamza. He testified that his contract ran from October 13, 1978, to October 13, 1979, and that his salary was $200.00 per week for a six day work week involving a minimum of 55 hours per week. Plaintiff stated that under his contract, he was to keep all profits from the merchandise concession at the pro shop.[2] Eckenrode also testified that, as a department head, he was entitled to take two meals per day at the resort's restaurant on the days he worked. This meals policy had been initiated by the former owner of the Samoset. Eckenrode testified that Mr. Manger continued this policy after Heritage acquired the resort. Plaintiff stated that the value of his meals was fifteen dollars per day.

A videotaped deposition of Mr. Hamza was shown to the jury at trial as part of defendant's case. Mr. Hamza acknowledged that plaintiff was a department head but stated that it was not corporate policy to allow any employee, other than food service employees, to take free meals while on duty. Mr. Hamza admitted, however, that he had no personal knowledge of what meal policy was followed at the Samoset as to plaintiff and neither he nor any other defense witness offered any evidence as to the value of meals provided at the Samoset.

In addition to his testimony concerning the terms of his contract and his entitlement to meals, plaintiff stated that he

---

**1.** By its terms, the memorandum purported to advise Mr. Manger of the "gist of [Mr. Hamza's] conversation and understanding arrived at with Jack Eckenrode." The memorandum listed plaintiff's duties and remuneration and was initialed by Mr. Manger. The memorandum stated that plaintiff's salary was $200.00 per week for a six day work week involving a minimum of 55 hours per week and that plaintiff was to carry

on a merchandise concession in the pro shop without any percentage to be taken by the resort. The memorandum was silent as to plaintiff's entitlement to meals.

**2.** Plaintiff testified that prior to his contract, Heritage received ten percent of gross sales at the shop.

earned approximately $2000.00 working for his brother during the period of his contract after he was terminated by defendant. Plaintiff also testified that he received from defendant $200.00 in vacation pay and $7,881.00 for the inventory and fixtures he owned in the pro shop as well as for eight golf carts he had supplied to the Samoset.

■ In its answer, in arguments prior to and at trial and in post-trial motions, Heritage maintained that plaintiff was an employee at will or, alternatively, that his claim was barred by the statute of frauds. 33 M.R.S.A. § 51(5) (1978). Defendant's principal argument on the statute of frauds issue is that if the statute applies, plaintiff produced no writing that satisfies the statute's requirements and therefore the contract is unenforceable. Defendant's fallback argument is that the contract is embodied in the October 13, 1978 memorandum, a fact that it contends precluded plaintiff from introducing parol evidence to supplement the terms of the memorandum, particularly as to the value of meals plaintiff testified he was entitled to take during his employment at the resort. Although defendant offers these alternative arguments for our consideration on appeal, a careful review of the record indicates that no evidence was introduced at trial sufficient to generate an issue that Eckenrode had a contract of employment for a period exceeding one year.

## II. The Jury Instructions.

Heritage claims that the presiding justice committed three errors in instructing the jury, any one of which requires this Court to vacate the judgment and remand for a new trial. Defendant asserts that the trial court should have instructed the jury on the statute of frauds and on the law of accord and satisfaction. Defendant also contends that the court improperly instructed the jury on the law of apparent agency. We find no error in the jury instructions or failure to instruct that requires us to alter the judgment as to defendant's liability.

### A. The Statute of Frauds.

■ The presiding justice refused defendant's request to instruct the jury on the statute of frauds, finding that plaintiff's part performance of the contract took the case outside the statute.[3] The reason given by the justice for his refusal is not necessarily correct. In cases involving oral contracts for services not to be performed within one year part performance by the party claiming breach will not always suffice to bar the application of the statute of frauds. *See* 2 Corbin, *Contracts* § 459 (1950 & Supp.1971).

We are satisfied, however, that the justice made the proper decision in denying defendant's request. No error exists therefore, that requires this Court to grant a new trial. *L. Ray Packing Co. v. Commercial Union Insurance Co.*, 469 A.2d 832, 834 (Me.1983); *Baybutt Construction Corp. v. Commercial Union Insurance Co.*, 455 A.2d 914, 917 (Me.1983); *Allstate Insurance Co. v. Lyons*, 400 A.2d 349, 352 (Me.1979). Had any evidence been introduced at trial tending to prove that Eckenrode entered into a contract with Heritage for a period exceeding one year, or if plaintiff had maintained at trial that the October 13, 1978 memorandum contained the terms of his contract, it would have been proper

---

**3.** The statute of frauds as it applies to oral agreements provides as follows:

No action shall be maintained in any of the following cases:

    *    *    *    *    *    *

*Agreement not to be performed within one year.* Upon any agreement that is not to be performed within one year from the making thereof;

    *    *    *    *    *    *

unless the promise, contract or agreement on which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith, or by some person thereunto lawfully authorized; but the consideration thereof need not be expressed therein, and may be proved otherwise.

33 M.R.S.A. § 51(5) (1978).

to grant plaintiff's request for a statute of frauds instruction. *See Towle v. Aube*, 310 A.2d 259, 266 (Me.1973). Defendant, however, contended throughout the trial that plaintiff had no contract and was merely an employee at will. Defendant's principal witnesses, Thomas Williams, a senior officer of Heritage's parent corporation, Builders Investment Group, and Milos Hamza both testified that plaintiff had no contract for any term with Heritage.[4] Plaintiff, on the other hand, introduced the October 13, 1978 memorandum as evidence of his one year oral contract with Heritage. It cannot now be contended by defendant on appeal that the memorandum constitutes the contract between Heritage and plaintiff or that the introduction of the memorandum into evidence generated a factual issue as to the contract's length for the purpose of applying the statute of frauds.

By the memorandum's own terms, it is internal correspondence from one corporate officer to another regarding a discussion of the terms of plaintiff's employment with Heritage and not a contract of employment. Because Eckenrode never asserted that the memorandum constituted the contract he entered with Heritage and because Heritage produced no evidence at trial from which the jury could conclude that plaintiff's contract was embodied in the memorandum, the length of plaintiff's contract was not in issue for the purpose of the applicability of the statute of frauds. The presiding justice, therefore, properly refused to give an instruction on the statute. *Stanley v. Schiavi Mobile Homes, Inc.*, 462 A.2d 1144, 1150 (Me.1983).

### B. Accord and Satisfaction.

■ Heritage claims that plaintiff's own testimony on cross-examination concerning his acceptance of $7,881.00 for the golf equipment in the pro shop and for the golf carts raises an issue of accord and satisfaction regarding plaintiff's claim for future lost profits from the shop. In light of this testimony, Heritage argues that the presiding justice should have instructed the jury on the law of accord and satisfaction. We note that defendant never requested the jury instruction at the time of trial. Our review, therefore, is limited to whether the error, if any, deprived Heritage of a fair trial and resulted in injustice. *See Nyzio v. Vaillancourt*, 382 A.2d 856, 863 (Me.1978); *see also Westcott v. Vickerson*, 284 A.2d 902, 904 (Me.1971); M.R.Civ.P. 51(b). Given our conclusion in Part IV *infra* that the issue of lost profits was too speculative to be considered by the jury, we need not decide whether the justice's failure *sua sponte* to instruct on accord and satisfaction as it relates to such profits, denied defendant a fair trial.

### C. Apparent Agency.

■ To find that a contract existed between plaintiff and Heritage, the jury had to find that Mr. Hamza or Mr. Manger had the authority to bind Heritage. In this regard, defendant claims that the justice erroneously stated the law of apparent agency when he instructed the jury. Specifically, defendant contends that the justice's instructions failed to make it clear that it is the conduct of the principal, not of the agent, to which the jury must look to determine whether the agent had the apparent authority to bind the corporation. *See Libby v. Concord General Mutual Insurance Co.*, 452 A.2d 979, 982 (Me.1982). We may disturb a judgment on the ground of an erroneous jury instruction only if the instruction failed sufficiently to inform the jury correctly and fairly in all necessary respects of the governing law, *Isaacson v. Husson College*, 332 A.2d 757, 762 (Me. 1975), and only if the instruction resulted in prejudice to the complaining party. *Murray v. Eastern Maine Medical Center*, 447 A.2d 465, 466 (Me.1982).

■ Our review of the instruction challenged here indicates that it was correct in

---

**4.** At trial, Mr. Williams referred to the October 13, 1978 memorandum as an "internal memorandum ... from Milos Hamza to Bill Manger." Mr. Hamza referred to the memorandum as a "job description."

all material respects. We also perceive no way that defendant could have been prejudiced by the instruction in light of the testimony given on cross-examination by defendant's own witness, Thomas Williams. Mr. Williams stated under oath that both Mr. Manger and Mr. Hamza had the authority to hire personnel at the Samoset and that Mr. Williams personally directed Mr. Hamza to handle the employment negotiations with plaintiff. Mr. Williams' testimony clearly indicates that the authority to employ was expressly granted to Messrs. Manger and Hamza. There is no evidence to the contrary. Given this undisputed testimony as to the existence of actual authority, defendant cannot be heard to complain that it was prejudiced by the instruction on the law of apparent agency.

### III. The Composition of the Jury.

On the second day of the trial in this case, the alternate juror, Richard Kenaston, was seated on the panel.[5] At the close of the evidence defense counsel was advised by plaintiff's attorney that Kenaston may have been a party in a prior employment contract suit brought in Maine. Defense counsel notified the presiding justice who made an extensive inquiry of Kenaston in chambers and on the record, but outside the presence of counsel. The juror disclosed that he in fact had been the plaintiff in an employment contract case against a Maine school district in the early 1970s.[6] This disclosure confirmed that Kenaston had failed to respond during the court's voir dire of the jury pool when the justice asked whether any member of the pool had ever been involved in an employment contract case in court. Kenaston explained his nondisclosure by stating that he had not thought of his case in years and that the case had not made a significant impact on him. He further stated that the

prior case would not affect his ability to deliberate impartially in the instant case.

■ After the questioning, the justice advised counsel of Kenaston's nondisclosure and the reasons therefor. The court then asked whether either party wanted to challenge the juror. Defense counsel made no request of the court to voir dire the juror. Instead, he immediately moved for a mistrial, whereupon the justice asked if counsel would be agreeable to proceeding with seven jurors. When defense counsel refused to consider the seven juror alternative until the court ruled on his request for a mistrial, the justice stated that he was satisfied that Kenaston was not tainted or prejudiced by his prior experience and, given the remoteness in time of the prior lawsuit and the absence of bitterness or disappointment on his part arising out of the former suit, found that he was "perfectly capable of being a fair and impartial juror." The justice then denied counsel's motion for a mistrial. Defendant claims that this ruling prejudiced his right to be tried by a disinterested, unbiased jury. We disagree.

We note initially that the present case presents no facts that would lead a factfinder to conclude that Kenaston intentionally misled the trial court during voir dire so as to avoid being excluded from the jury panel. The trial justice found, after inquiry, that Kenaston's failure to respond on voir dire resulted from a combination of the fact that a great amount of time had elapsed since the resolution of his suit and the fact that the case had little emotional impact on him. As such, Kenaston's nondisclosure was an innocent, as opposed to an intentional, misrepresentation.

■ In cases where a juror during voir dire innocently withholds information that denies counsel information material to his

---

5. The presiding justice excused one of the original members of the panel after she advised the court that she had learned that her husband was acquainted with plaintiff and believed that she could no longer be impartial. Neither party objected to the seating of the alternate.

6. Kenaston prevailed in that suit and the judgment was affirmed by this Court. *Kenaston v. School Administrative District # 40*, 317 A.2d 7 (Me.1974).

decision as to whether to exercise a challenge under M.R.Civ.P. 47(c)(3), a new trial is not automatically required.[7] *Isaacson v. Husson College,* 332 A.2d 757, 764–65 (Me. 1975). Instead, a new trial should be ordered "only if such [nondisclosure] has otherwise caused prejudice to the party seeking the new trial insofar as it prevented him from becoming aware of a bias of the juror as probably, not speculatively, existent." *Id.* The presiding justice retains broad discretion in determining whether a new trial is appropriate and the Law Court will reverse the justice's decision only upon a clear showing of an abuse of discretion. *Id.*

We conclude that the justice below acted properly within his discretion when he denied defendant's mistrial motion. Before he ruled, the justice carefully examined Kenaston regarding his prior involvement in an employment contract suit and the circumstances surrounding his nondisclosure on voir dire in the present suit. In his brief to this Court defendant argues that since Kenaston's suit presented legal issues similar to those raised in the present case, Kenaston's bias as a juror is clearly demonstrated. The similarity of Kenaston's suit to the instant case, however, is only one factor that the presiding justice properly considered in deciding the issue of Kenaston's probable bias. The remoteness in time of Kenaston's prior claim, the innocence of his nondisclosure and the lack of connection of Kenaston's suit with plaintiff's cause of action were also factors properly considered by the trial justice and resolved by him against the position taken by defendant. To have concluded on this record that Kenaston harbored a probable bias against defendant would have required speculation by the Superior Court. The

presiding justice exhibited a proper exercise of his discretion when he denied defendant's motion for a mistrial.

### IV. Damages.

■ The presiding justice allowed the jury to consider damages claimed by plaintiff for the loss of salary, the value of lost meals and the value of lost profits from the pro shop. Defendant contends that plaintiff's claims for the value of lost meals and the value of lost profits should not have gone to the jury. We hold that it was proper for the justice to allow the jury to consider the claim for the value of lost meals but that it was improper to allow the jury to consider the claim for lost profits.

Defendant's argument against jury consideration of the claim for lost meals is based on the view that the statute of frauds precludes consideration of contract terms not contained in the writing evidencing the contract. Without deciding whether defendant's view is consistent with law, we have already held in this case that the presiding justice properly found that plaintiff's contract claim was not within the statute of frauds. Accordingly, based on the evidence produced by plaintiff as to the value of and his entitlement to meals during the contract period, the justice was correct in allowing plaintiff's claim for the value of lost meals to be considered by the jury.

■ The justice erred, however, when he allowed the jury to consider plaintiff's claim for lost profits. Prospective profits are recoverable as damages only if the profits can be estimated with reasonable certainty. *Sheridan Corp. v. Silsby,* 410 A.2d 225, 227 (Me.1980); *Ginn v. Penobscot Co.,* 334 A.2d 874, 887 (Me.1975).

7. Rule 47(c)(3) provides:

RULE 47. JURORS

\* \* \* \* \* \*

(c) *Peremptory Challenges.*

\* \* \* \* \* \*

(3) *Number.* Each party shall be entitled to three peremptory challenges. Several defendants or several plaintiffs may be considered as a single party for the purpose of making challenges, or the court may allow additional peremptory challenges and permit them to be exercised separately or jointly.

At trial, plaintiff relied heavily on his 1978 federal income tax return to predict his profits for the period in 1979 covered by his contract. Plaintiff also testified to how his expenses and profits on sales would be altered under the terms of his employment contract.[8] Plaintiff, however, produced no evidence as to the actual profitability of the pro shop or the volume of business at the golf course during the 1979 season covered by his contract. Without this type of foundation, the jury necessarily was left to speculate as to plaintiff's lost profits claim. Plaintiff's own opinion as to the increased profits he would have reaped had he operated the shop for the entire period of his contract, based merely on one year's past performance of the shop and on changes that would result under the contract as to plaintiff's expenses and profit retention, was not an informed opinion based on relevant facts in evidence upon which the jury could rely in assessing damages for claimed lost profits. *See Ginn,* 334 A.2d at 887. Based on the evidence of record, the presiding justice should have refused to allow the lost profits claim to be considered by the jury.

The entry is:

Judgment affirmed as to defendant's liability on the oral contract.

Case remanded to the Superior Court with instructions to enter the following Order:

If plaintiff remits all the judgment in excess of nine thousand twenty dollars within 30 days after the rescript in this case is received, the appeal is denied; otherwise the appeal is sustained and a new trial on the issue of damages only is granted.

All concurring.

8. Specifically, plaintiff testified that under his contract, Heritage would no longer take a percentage of pro shop receipts. Plaintiff also stated that his business expenses related to the pro shop would have been less during the period of his contract than they were in 1978 because he anticipated no outlays for shop fixtures and because he would no longer be required to maintain and supply gasoline for the golf carts he rented to customers.