**William B. JUCIUS**

v.

**ESTATE OF Francis R. O'KANE** [1].

Supreme Judicial Court of Maine.

Argued May 8, 1986.

Decided June 23, 1986.

Paine, Lynch & Harris, Martha J. Harris (orally), Bangor, for plaintiff.

Gross, Minsky, Mogul & Singal, Jules L. Mogul (orally), Richard Silver, Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

The plaintiff, William B. Jucius, appeals from the judgment of the Superior Court, Penobscot County, entered on a jury verdict finding the defendant, Francis R. O'Kane, M.D., not liable for negligent failure to diagnose.[2] On appeal Jucius con-

---

**1.** During the pendency of this appeal O'Kane died, and we granted the plaintiff's motion to substitute O'Kane's estate as the party-defendant.

**2.** In his complaint Jucius also named as defendants, O.S. Nielsen, M.D., and the Millinocket Regional Hospital. The court subsequently granted Jucius's motion to dismiss Nielsen as a defendant. At the close of the plaintiff's case in

tends that the court erred in allowing substitution of belatedly discovered progress notes made by O'Kane into the hospital medical records admitted into evidence while denying admission of evidence of a discrepancy in the progress notes. We agree that the evidentiary rulings were erroneous, but hold them harmless on the facts of this case, and affirm the judgment.

## I

At 2:00 a.m. on December 26, 1979, Jucius was awakened by severe pain in his abdomen and was admitted to Millinocket Regional Hospital (Hospital) a few hours later. During his hospitalization he was under the care of O'Kane, a general practitioner. On the day of admission O'Kane diagnosed Jucius as suffering from acute peptic ulcer syndrome and gastroenteritis and prescribed treatment for these conditions. The presence of an ulcer was subsequently confirmed. At some point during the morning of December 30, Jucius experienced pain of greater severity. At 2:00 p.m. on December 30 Jucius was transferred from the Hospital to Eastern Maine Medical Center (EMMC), where surgery was performed and about 3 feet of dead intestinal tissue removed.

At trial the expert witnesses for both parties agreed that Jucius had suffered a bowel infarction[3] and that regardless of O'Kane's diagnosis and treatment surgical intervention was necessary. The parties sharply differed, however, as to when the infarction had occurred and therefore as to when surgery was first required. Jucius's expert witness, David McAfee, M.D., opined that the infarction began when Jucius was awakened by pain on December 26 and that while O'Kane was not negligent in failing to diagnose the infarction upon Jucius's hospitalization, he was negligent in failing to seek a surgical consultation at

that time. O'Kane's expert witnesses opined that the bowel infarction occurred on December 30 and that if it had occurred on December 26, Jucius would have died before his arrival at EMMC.

Prior to trial Jucius's attorney obtained a copy of the Hospital's medical records pertaining to her client. These records contained, *inter alia,* a single page with two progress notes ("Page A") written by O'Kane and dated December 27 and 29, respectively. On the morning of trial O'Kane's attorney supplied Jucius and the court with a single page containing four progress notes ("Page B") written by O'Kane, two notes identical to Page A and two additional notes dated December 30, 9:00 a.m. and 12 noon. O'Kane's attorney had discovered Page B the previous evening while interviewing Geoffrey Gratwick, M.D., a gastroenterologist, who had examined Jucius on his arrival at EMMC.

By voir dire of witnesses and discussions between the court and the parties out of the presence of the jury the history of Page B was clarified. Page B could not be located in Jucius's records at the Hospital, but was located with Jucius's records at EMMC. Gratwick had obtained Page B when he copied for his inspection portions of Jucius's records located at EMMC. O'Kane testified on voir dire that he had written the two additional progress notes some time after 1:00 p.m. on December 30 after the Hospital's records personnel had copied the records to be sent with Jucius to EMMC. Thus the additional notes were written on a copy of the original [Page A] held at the Hospital. O'Kane further testified that he had never examined Jucius's records located at EMMC and was "absolutely certain" that he did not write the additional progress notes after December 30.

chief the court granted the motion of the hospital for a directed verdict in its favor. Jucius has not appealed from the judgment in favor of the hospital.

3. As the expert witnesses characterized this condition, an embolism obstructs the mesenteric artery or, in this case, a branch of that artery and thus blocks the flow of blood to a portion of the intestine causing the tissue to die.

The court excluded Page A from evidence, allowing Page B to be substituted in the Hospital's medical records admitted into evidence, and did not permit Jucius to cross-examine O'Kane or Gratwick in the presence of the jury as to the history of the additional progress notes. The court reasoned that to permit evidence of the discrepancy to go before the jury would raise a collateral issue of fraud that Jucius did not claim and for which there was no evidentiary basis. Jucius did not object to the introduction of Page B into evidence, but objected to its substitution into the Hospital's records and to the exclusion from evidence of Page A. Jucius contends on appeal that these evidentiary rulings were erroneous and prejudicial.

## II

We recognize that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice [or] confusion of the issues." M.R.Evid. 403.[4] Prejudice in this context means more than damage to the opponent's cause:

> A party's case is always damaged by evidence that the facts are contrary to his contentions; but that cannot be ground for exclusion. What is meant here is an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one.

McCormick, *Law of Evidence* § 185 at 439 n. 31 (2d ed. E. Cleary ed. 1972), quoted in *State v. Hurd,* 360 A.2d 525, 527 n. 5 (Me.1976). The determination whether the risk of unfair prejudice or confusion of the issues substantially outweighs the probative value of the evidence rests in the sound discretion of the trial court. *Hamor v. Maine Coast Memorial Hospital,* 483 A.2d 718, 721 (Me.1984); *State v. Franklin,* 478 A.2d 1107, 1110 (Me.1984).

■ We hold, nevertheless, that the trial court abused its discretion in the instant case. The frequency and accuracy of O'Kane's observation of his patient and the degree of consistency between the Hospital's medical records and O'Kane's testimony at trial were relevant as factors tending to establish or negate O'Kane's credibility as a witness. *See Black's Law Dictionary* 330 (5th ed. 1979) (defining "credibility" as "[w]orthiness of belief; that quality in a witness which renders his evidence worthy of belief"). Jucius should have been permitted therefore to cross-examine O'Kane in the presence of the jury on the discrepancy in the progress notes. *See* M.R. Evid. 607, 611(b). To avoid unfair prejudice or the raising of a collateral issue the court could have defined the scope of this cross-examination and instructed the jury as to the purpose for which the evidence was admitted. *See* M.R.Evid. 105, 611(b). On the facts of this case the exclusion of evidence of the discrepancy and the corresponding limitation of cross-examination were erroneous.

■ Furthermore, we do not approve of the removal of Page A from the Hospital's medical records admitted into evidence and its replacement by Page B. When a patient enters a hospital, he becomes subject to a process of observation, diagnosis and treatment by hospital staff and by physicians with hospital privileges. This process literally involves matters of life and death. For the integrity of the hospital process it is essential that hospital medical records be preserved and made available, as appropriate, to medical personnel and patients. *See* 22 M.R.S.A. § 1711 (1980) (patient access to hospital medical records). For the integrity of judicial review of the hospital process it is essential that complete and accurate hospital medical records be admitted, as appropriate, into evidence. *See* 16 M.R.S.A. § 357 (1983) (hospital medical records

**4.** In full, M.R.Evid. 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

are admissible if "certified by the persons in custody thereof to be true and complete"); M.R.Evid. 803(4) (statements made for purposes of medical diagnosis or treatment constitute an exception to the hearsay rule). The substitution of Page B into the Hospital's medical records admitted into evidence was therefore improper.

Even though evidence of the discrepancy in the progress notes was improperly excluded, the judgment will not be vacated unless the error prejudiced a substantial right of Jucius. *See* M.R.Evid. 103(a). A substantial right has not been affected if it is highly probable that the error did not affect the judgment. *See State v. True*, 438 A.2d 460, 467 (Me.1981).

 In the instant case the essence of Jucius's claim of negligence is that O'Kane should have diagnosed Jucius's condition on December 26 as requiring an immediate surgical consultation. Any action by O'Kane on December 30 is irrelevant to that claim. We note in addition that Jucius does not allege any fraud or deception on the part of O'Kane and that the progress notes dated December 30 are consistent with the Hospital's records of the physician's orders and nurse's notes of the same date whose authenticity and contemporaneity have not been challenged. After a careful review of the entire record we conclude that it is highly probable that the error did not affect the verdict.

The entry is:

Judgment affirmed.

All concurring.