Winifred PHILLIPS, P.R. of Estate of
Norman Gardner, et al.

v.

EASTERN MAINE MEDICAL CENTER.

Supreme Judicial Court of Maine.

Argued Nov. 9, 1988.
Decided Oct. 12, 1989.

Warren M. Silver (orally), Wayne R. Foote, Bangor, for plaintiff.

Malcolm L. Lyons (orally) John C. Nivison, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Augusta, for defendant.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

ROBERTS, Justice.

The Eastern Maine Medical Center (Medical Center) appeals from a judgment entered after a jury trial in Superior Court (Penobscot County, *McKinley, J.*). The jury found that Norman Gardner's death was the result of the failure of the Medical Center's staff to detect and repair an esophageal tear. The Medical Center challenges the sufficiency of expert testimony on causation, an evidentiary ruling on the introduction of a deposition, and the jury instructions. It also contends the damages awarded are excessive. Because we agree with the last contention only, we order a remittitur.

On June 26, 1983, a piece of meat became lodged in Norman Gardner's esophagus as he was eating lunch. Several hours later, with the meat still lodged, Gardner went to the emergency room at the Medical Center. After an emergency room physician tried unsuccessfully to remove the meat, a surgeon was called. The meat was surgically removed from Gardner's throat in the early morning of June 27.

About an hour after surgery, Mrs. Gardner visited her husband and reported to the recovery nurse that he was wheezing and in pain. Although the symptoms signaled that there was a tear in the esophagus, the nurse did not inform the surgeon. When he was informed, some six hours later, he ordered an esophagram and performed a thoracotomy to repair a two millimeter esophageal tear.

After the thoracotomy, Gardner's condition continued to worsen and a specialist in internal medicine and infectious disease was consulted. The specialist testified at trial that Gardner's condition was the result of infection from the intestinal tract transmitted during the six hours before the tear was repaired. The specialist further testified that Gardner's death, 74 days later, probably could have been avoided had the tear been repaired quickly.

The jury returned a verdict totaling $1,026,700 in damages, of which $740,000 was allocated to Gardner's conscious pain and suffering and loss of enjoyment of life. This appeal ensued.

## I. *Proximate Cause*

In order to establish liability in a medical malpractice case, the plaintiff must show that the defendant's departure from a recognized standard of care was the proximate cause of the injury. *Cox v. Dela Cruz*, 406 A.2d 620 (Me.1979). Evidence at trial indicated that pain was a symptom of

an esophageal tear and that, to prevent infection, the tear must be repaired quickly. The failure of the hospital staff to notify the surgeon was a departure from a recognized standard of care.

■ The Medical Center insists, however, that the evidence is insufficient to establish causation. The hospital argues that the patient's chances for survival, even if the tear were repaired in less than six hours, would have been less than 50% or less than probable. According to its argument the jury could not have found the hospital's negligence was the proximate cause of death.

There are different approaches to the evaluation of evidence of causation in medical malpractice cases. Some jurisdictions require the plaintiff to show a better than even chance of avoiding harm in the absence of medical negligence. *See e.g. Cooper v. Sisters of Charity of Cincinnati,* 27 Ohio St.2d 242, 272 N.E.2d 97 (1971); *Curry v. Summer,* 136 Ill.App.3d 468, 91 Ill. Dec. 365, 483 N.E.2d 711 (1985); *Gooding v. University Hospital Building,* 445 So.2d 1015 (Fla.1984).

Other courts employ what is called the "last chance" or "lost chance" of survival test, in which the plaintiff must show that he was deprived of a significant chance of avoiding harm. *See e.g. Roberson v. Counselman,* 235 Kan. 1006, 686 P.2d 149 (1984); *Northern Trust Co. v. Louis A. Weiss Memorial Hospital,* 143 Ill.App.3d 479, 97 Ill.Dec. 524, 493 N.E.2d 6 (1986); *Sharp v. Kaiser Foundation Health Plan,* 710 P.2d 1153 (Colo.App.1985).

Based on the testimony at trial, we conclude that the jury could rationally determine that the plaintiffs satisfied even the more stringent requirement. The specialist's opinion that, had the tear been repaired within six hours, Gardner would have had a better than even chance of survival is sufficient. The Medical Center's argument that cross-examination revealed factors affecting the 50% prediction misses the point. Properly interpreted, the specialist's testimony explained that any delay decreases the prospect of survival and that *until* six hours elapsed the pros-

pect was better than 50%. Obviously, the jury was free to conclude that due care on the part of the Medical Center would have produced repair in far less than six hours.

## II. *Deposition*

■ At the conclusion of the defendant's case, the Medical Center offered as evidence a deposition which allegedly contained contradictory testimony of Mrs. Gardner. The trial court refused admission on the grounds of unfairness because she had not been cross-examined on her deposition testimony.

The deposition of a party may be used at trial for any purpose. M.R.Civ.P. 32(a)(2). 1 Field, McKusick & Wroth, *Maine Civil Practice* § 26.20, at 447 (2d ed.1970). The exclusion of Mrs. Gardner's deposition was error. Rulings of this kind are not disturbed, however, unless the party challenging the ruling shows prejudice. M.R.Civ.P. 61; 2 Field, McKusick & Wroth § 61.1, at 80. M.R.Evid. 103(a); Field & Murray, *Maine Evidence* § 103.1, at 5 (1987).

The Medical Center has not provided us with a copy of the deposition, which was not filed with the trial court or made a part of the record on appeal. We must, therefore, rely on the colloquy between the court and defense counsel to determine if the exclusion was prejudicial. The deposition testimony, as represented by this exchange with the court, was generally consistent with that given at trial. The Medical Center's attempt to introduce an additional statement that Mrs. Gardner thought her husband would die at the outset was simply not probative on the medical likelihood of his survival. We conclude that it is highly probable that the exclusion did not affect the verdict of the jury. *Jucius v. Estate of O'Kane,* 511 A.2d 1053, 1056 (Me.1986).

## III. *Jury Instructions*

■ This Court will disturb a judgment on the grounds that the jury instructions were in error only if the instruction failed to inform the jury correctly and fairly in all necessary respects of the governing law. *Eckenrode v. Heritage Management Corp.,* 480 A.2d 759 (Me.1984). According-

ly, we conclude that the trial court's instruction to the jury on the "fragile condition" of the patient and the duties owed by the physician correctly stated the law.

■ The Medical Center argues that the issue of the "fragile condition" of the patient was never generated and that, in fact, the instruction was misleading on the issue of proximate causation. Throughout the trial, evidence of the patient's diabetes, weight, and age, as well as alleged emphysema, was presented by the defense as causes of the patient's death. It was the position of the Medical Center throughout the trial that the delay in repairing the tear was not fatal and that the patient's prognosis was, from the start, not good. The issue of the patient's "fragile condition" was properly raised by the evidence and the jury was properly instructed to consider the patient's fragile condition only after they had determined that the negligence of the hospital was a proximate cause of Gardner's injury.

## IV. *Damages*

■ The Medical Center argues that the award of $740,000 for Gardner's pain and suffering is excessive. The Medical Center relies on *Chenell v. Westbrook College*, 324 A.2d 735 (Me.1974) as defining the *duty* of the court to set aside a verdict if the jury disregards the evidence or acts from passion or prejudice. Although we will not substitute our judgment for that of the jury, we must examine the record to determine whether the jury's award exceeds the limit of evidentiary support. We conclude that limit is exceeded in the case at bar.

■ The evidence viewed most favorably to the plaintiffs establishes that Gardner survived in a state of deteriorating health for less than three months. We recognize that, in addition to the mental anguish caused by his impending death, Gardner experienced varying degrees of physical pain throughout his ordeal. Nevertheless, we are left with the firm conviction that the jury was *misled* by the fact that death ultimately ensued. We are

influenced by the special verdict form that asked the jury to assess a dollar amount for "conscious pain and suffering and *loss of enjoyment of life*." (emphasis added) Although the Medical Center does not challenge the form or the jury instructions, we find the instruction less than clear that "loss of enjoyment of life" must be limited to the period of survival. The decedent's loss of his full life expectancy is not an element of damage recoverable by a personal representative pursuant to 18–A M.R.S.A. § 2–804. The jury could reach the amount assessed only through consideration of elements of damage not covered by Section 2–804. Accordingly, we order a new trial on that aspect of damage alone unless plaintiff Phillips remits all in excess of $370,000.

## V. *Loss of Consortium*

At oral argument the Medical Center conceded that the two claims for loss of consortium under 19 M.R.S.A. § 167–A (loss of consortium) and 18–A M.R.S.A. § 2–804 (wrongful death) were based on different time periods and were not duplicative.

The entry is:

Judgment for $10,000 in favor of Helen L. Gardner affirmed.

Judgment in favor of Winifred F.G. Phillips, P.R. vacated.

Remanded for entry of an order granting a new trial on the issue of damages for conscious pain and suffering only, unless plaintiff Phillips remits all of said judgment in excess of $646,700 within 30 days of the entry of the order.

WATHEN, CLIFFORD, HORNBY and COLLINS, JJ., concur.

GLASSMAN, Justice, concurring in part and dissenting in part.

I must respectfully dissent to part IV of the court's opinion. In this case the trial court, after a hearing, denied the Medical Center's motion for a new trial based on the ground that the damages awarded by

the jury were excessive.[1]

When the trial court is presented with a motion for a new trial, it must view the evidence in the light most favorable to the conclusion that the jury's finding was correct. *Chenell v. Westbrook College*, 324 A.2d 735, 737 (Me.1974). The trial court cannot substitute its judgment as to the credibility of witnesses for the judgment of the jury. *Id.* The assessment of damages is the sole province of the jury, and the amount fixed must stand unless it is apparent the jury acted under some bias, prejudice or improper influence, or made some mistake of law or fact. *Poulette v. Herbert C. Haynes, Inc.*, 347 A.2d 596, 599 (Me.1975).

It is well established that this court's scope of review of a trial court's disposition of a motion for a new trial is very limited when the motion is based on the excessiveness or inadequacy of damages awarded by a jury.[2] We have repeatedly stated that:

> In deciding the correctness of the action taken by the presiding Justice we cannot substitute our judgment for his. His order may be reversed by us only 'in the event that a clear and manifest abuse of discretion on the part of the trial judge is shown.'

*Chenell v. Westbrook College*, 324 A.2d 735, 737 (Me.1974)[3] (quoting *MacLean v. Jack*, 160 Me. 93, 99, 198 A.2d 1, 4 (1964)). *See also Binette v. Deane*, 391 A.2d 811, 813 (Me.1978); *Poulette v. Herbert C. Haynes, Inc.*, 347 A.2d 596, 599, 600 (Me. 1975); *Marr v. Shores*, 495 A.2d 1202, 1206 (Me.1985); *Werner v. Lane*, 393 A.2d 1329, 1332 (Me.1978). Moreover, "[w]hen the determination of any question rests in the judicial discretion of the trial court, the exercise of that discretion can not [sic] be reviewed by an appellate court unless it is made to appear that the decision was clearly wrong or that it was based upon some

error in law." *Young v. Carignan*, 152 Me. 332, 337, 129 A.2d 216, 218 (1957) (quoting *Rioux v. Portland Water District*, 132 Me. 307, 309, 170 A. 63, 64 (1934)).

The reasoning for our limited review was concisely set forth by this court in *Mandarelli v. McGovern*, 393 A.2d 533, 535 (Me.1978) (quoted with approval in *Marr v. Shores*, 495 A.2d at 1206).

> [The trial court] before whom an action has been tried is in a far better position than an appellate court to know whether in light of [its] observations at the trial the damages awarded by the jury were so wholly inconsistent with the proof as to reflect some bias, prejudice or improper influence on the part of the jury or to support the conclusion that the verdict was the result of some mistake of fact or law on their part.

Clearly the burden is on the Medical Center to show that the record reveals that the trial court's ruling denying the Medical Center's motion for a new trial was a clear and manifest abuse of the court's discretion. The Medical Center has failed to meet this burden. It rests its claim that the trial court committed error on the bald assertion that the damages assessed by the jury are excessive. The Medical Center points to nothing in the record that would support a claim that the trial court clearly should have found the damages so wholly inconsistent with the proof as to reflect that the jury acted improperly, nor does it claim any error of law in the trial court's decision.

The Medical Center did not before the trial court and has not before this court challenged the special verdict form or the instructions given by the trial court to the jury. The first two questions of the special verdict addressed the issues of negligence and proximate cause. The third question addressed damages and was broken into

---

1. Eastern Maine Medical Center did not provide this court with a transcript of that hearing.

2. With the adoption of the Rules of Civil Procedure on December 1, 1959, the former optional choice of presenting a motion for new trial directly to the Law Court was abolished. Accordingly, the decisions of this court between

1928 and 1956 cited by Eastern Maine Medical Center in its brief are of scant assistance.

3. It should be noted that in *Chenell v. Westbrook College*, we held that the defendant had not demonstrated on the record that the trial court had manifestly abused its discretion in granting the plaintiffs' motion for a new trial.

six subparts of (a) through (f). The sixth subpart, (f), dealt with damages for Mr. Gardner's conscious pain and suffering and loss of enjoyment of life. The trial court carefully instructed the jury as to each of the subparts. As to subpart (f), the trial court instructed the jury:

> Conscious pain and suffering and loss of enjoyment of life, in that item we are talking about the pain and suffering suffered by Mr. Gardner *during the period of time that he lived from the date of in [sic] the injury until the date of—until the date of his death.* Now, included in pain and suffering there's both mental and physical suffering. Physical—physical suffering, of course, is something that we are all somewhat familiar with, we have all had to endure pain to some degree and know something about what it is. Mental suffering is something that is more difficult to define. It's the—it's the mental anguish. that results from having suffered the physical injuries and the inability to carry—the loss of enjoyment of life, the inability of one to carry on one's life in the same fashion that it would have been carried on had the injury not occurred. The inability to do those things that one otherwise would be able to do; and, again, those are all matters within your discretion. The—the law sets no magic formula for—for these matters. It's the function of the Jury to consider all of the evidence and to make a decision based upon that evidence and by evaluating that evidence in—in the light of your collective wisdom and judgment and experience. (emphasis added).

Contrary to the court's assertion, nothing in this record suggests, nor does the Medical Center contend, that the jury misunderstood or was confused by either the special verdict form or the trial court's proper instruction as to the time span to be considered by the jury. In *Michaud v. Steckino,* 390 A.2d 524, 536 (Me.1978), we clearly stated the standard of our review of instructions on damages.

This court must presume that the jury followed the trial court's instruction respecting the several elements of damage to which the plaintiff was entitled, once they had decided on the question of liabil-

ity, and that they did not base any part of their dollar verdict on matters not mentioned in the evidence nor in the charge. It must be presumed that the jurors were influenced in their verdict *only* by the law as given them by the trial justice and the legal evidence presented to them during the course of the trial, and that no significant extraneous matter infiltrated their decisionmaking. [citations omitted] Any other rule would assume misconduct on the part of the jury, an assumption in which we are not justified to indulge. (emphasis in original).

*See also State v. Franzen,* 461 A.2d 1068, 1073 (Me.1983) ("We cannot presume that the jury was too ignorant to comprehend the law given to them in this case and to apply the same to the facts which it was within their province to find.") "It is not for the reviewing court to interfere merely because the award is large, or because the court would have awarded less." *Wallace v. Coca-Cola Bottling Plants, Inc.,* 269 A.2d 117, 122 (Me.1970) (quoting *Baston v. Thombs,* 127 Me. 278, 281, 143 A. 63, 64 (1928)).

For the period of the 74 days that Mr. Gardner survived the injury imposed on him by the negligence of the Medical Center, the record is replete with the pain and suffering he endured and his inability to carry on his life in the same fashion that it would have been carried on had the injury not occurred.

The trial court properly exercised its discretion in determining both that the jury's assessment of damages was supported by credible evidence and that the jury had not acted under some bias, prejudice or undue influence or reached its verdict under some mistake of law or in disregard of evidentiary facts. *Binette v. Deane,* 391 A.2d at 815. Accordingly, I would affirm the decision of the Superior Court.