**Joan COX**

v.

**Dr. Teodore DELA CRUZ.**

Supreme Judicial Court of Maine.

Oct. 12, 1979.

Paine & Lynch by Errol K. Paine (orally), John D. Bunker, Bangor, for plaintiff.

Locke, Campbell & Chapman by Joseph B. Campbell, Augusta (orally), for Dr. Dela Cruz.

Rudman, Rudman & Carter by Michael P. Friedman, Bangor, for PenBay.

Roger A. Welch, Waterville, for Dr. Olds.

Terry W. Calderwood, Camden, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, GODFREY and GLASSMAN, JJ.

GLASSMAN, Justice.

In late February, 1976, the plaintiff, a woman approximately thirty years old and the mother of four children, sought the professional services of the defendant, Dr. Dela Cruz, a neurosurgeon, complaining of a persistent pain in her lower back. In obtaining the medical history of the plaintiff, neither the doctor nor his nurse inquired into the possibility that the plaintiff was pregnant. Unknown to either Dr. Dela Cruz or Mrs. Cox, the plaintiff was in fact pregnant. After performing a neurological examination, consisting of a series of exercises and a nerve reflex test, Dr. Dela Cruz suspected Mrs. Cox might have a spinal cord tumor and ordered that x-rays be taken of the plaintiff's lower back or pelvic region.

Pursuant to this order, a series of three x-rays was taken on March 2, 1976 at a local medical facility. Shortly thereafter, Mrs. Cox consulted a physician specializing in obstetrics and gynecology because she wasn't feeling well, she was fearful the medicine Dr. Dela Cruz had prescribed was making her ill, and she suspected a vaginal infection. This physician's examination revealed Mrs. Cox's pregnancy. The age of the fetus was approximately five and one-half weeks. Upon discovering that the plaintiff had been subjected to x-rays three days earlier, the obstetrician-gynecologist recommended a therapeutic abortion because of possible radiation damage to the fetus. Although he subsequently withdrew from providing further treatment to Mrs. Cox, an abortion was performed by a third physician on March 17, 1976.

The plaintiff filed a complaint in the Superior Court, Knox County, alleging that Dr. Dela Cruz had negligently failed to examine her, had negligently failed to obtain an adequate medical history and, by ordering the x-rays, had negligently prescribed an inappropriate medical procedure. In addition, the plaintiff sought damages from the medical facility for negligence in taking x-rays at a time when she was pregnant and from the obstetrician-gynecologist, alleging he had breached a contract to perform an abortion and he was guilty of assault and battery.

Prior to trial, summary judgment was granted as to the assault and battery charge against the obstetrician and the claim against the medical facility was dismissed on oral motion. At the close of all the evidence, the presiding Justice denied motions for a directed verdict by the remaining two defendants. The jury returned special verdicts in favor of the plaintiff against Dr. Dela Cruz and in favor of the defendant obstetrician-gynecologist on the breach of contract count. The defendant Dela Cruz made a timely motion for a judgment notwithstanding the verdict. The presiding Justice granted this motion because the plaintiff had failed to present expert testimony either on the standard of medical care required or on the defendant's departure from that standard. The plaintiff appeals from this judgment entered notwithstanding the verdict. We affirm the judgment.

The standard of review for testing the propriety of granting a motion of a defendant for judgment notwithstanding the verdict is the same as that for reviewing the grant of a directed verdict for the defendant. *Manchester v. Dugan*, Me., 247 A.2d 827, 828 (1968). "[W]e must view the evidence, 'including every justifiable inference,' in the light most favorable to the plaintiff so that we may decide whether by any reasonable view of this evidence a jury verdict for the plaintiff could be sustained." *Boetsch v. Rockland Jaycees*, Me., 288 A.2d

102, 104 (1972). The issue presented for decision is whether, as a matter of law, the plaintiff presented legally sufficient evidence at trial to support a jury verdict that Dr. Dela Cruz was negligent in his care of Mrs. Cox.

The burden is on the plaintiff to prove both that the defendant physician was negligent and that the physician's conduct proximately caused the plaintiff's injury. Ordinarily, the plaintiff can discharge this burden only through expert medical testimony establishing: (1) the appropriate standard of medical care, (2) the defendant departed from that recognized standard, and (3) the conduct in violation of the standard was the proximate cause of the plaintiff's injury. *Caron v. Pratt*, Me., 336 A.2d 856, 860 (1975); *Downer v. Veilleux*, Me., 322 A.2d 82, 84 (1974); *Cyr v. Giesen*, 150 Me. 248, 251–52, 108 A.2d 316, 318 (1954). An exception to the rule requiring expert medical testimony is recognized "where the negligence and harmful results are sufficiently obvious as to lie within common knowledge . . . ."[1] *Cyr v. Giesen, supra*, 150 Me. at 252, 108 A.2d at 318.

The plaintiff produced no direct medical evidence on the standard of care ordinarily exercised by the average, reasonably skillful neurosurgeon or that the defendant, by failing to ascertain whether Mrs. Cox was pregnant and in ordering diagnostic x-rays of the pelvic region, deviated from that recognized standard. Contending that this case falls within the exception to the rule, the plaintiff argues the risk of injury to a fetus from the use of x-ray is so obvious, it is within common knowledge that a physician exercising ordinary care will before ordering x-rays of a woman of child-bearing age inquire as to whether that woman is pregnant.[2]

The evidence does not support the plaintiff's contention as to the obviousness of the risk. The obstetrician-gynecologist who recommended the abortion testified he could not give a specific percentage of fetuses that might be damaged by x-ray. He further testified there was a marked difference of opinion between the American College of Obstetricians and the American College of Radiologists as to the propriety of subjecting a pregnant woman to x-ray and this difference had recently been resolved in favor of doing x-rays. The defendant testified that if the patient were pregnant the risk of deformity from x-ray was one-tenth of one percent and, furthermore, he would have ordered the x-rays even if he had known of Mrs. Cox's pregnancy. In addition, there was no testimony as to what percentage of women of child-bearing age were pregnant. This figure was essential to an evaluation of the risk of injury from the administration of x-rays to a woman of child-bearing age.

The basic premise of the plaintiff's argument is that the risk of injury to a fetus from x-ray is obvious. Rather than estab-

1. Courts commonly hold expert medical testimony unnecessary in cases involving egregious mistreatment where the malpractice is sufficiently apparent as to lie within the understanding of laymen. *See, e. g., Lanier v. Trammell*, 207 Ark. 372, 375, 180 S.W.2d 818, 820–21 (1944) (failure to wash hands and to sterilize instruments before eye operation); *Evans v. Roberts*, 172 Iowa 653, 657, 154 N.W. 923, 925–26 (1915) (physician cut off portion of child's tongue while performing adenoidectomy); *Laws v. Harter*, 534 S.W.2d 449, 450–51 (Ky.1975) (surgical sponge left in patient; court held defendant negligent as matter of law); *Malone v. Bianchi*, 318 Mass. 179, 180, 61 N.E.2d 1, 2 (1945) (dentist extracting tooth dropped fragment which became lodged in patient's bronchus).

2. The plaintiff does not maintain that there was any violation of the physician's duty to inform his patient of the potential risks incident to treatment. *See Downer v. Veilleux, supra*, 322 A.2d at 89–92. The issue of informed consent was argued in the plaintiff's brief but abandoned at oral argument. This issue was not properly before the Court in any event because the trial had not proceeded on the theory of lack of informed consent, and the issue had never been raised at any stage of the proceedings in the Superior Court. *See McNicholas v. York Beach Village*, Me., 394 A.2d 264, 268 (1978).

lishing the obviousness of the risk, the evidence adduced at trial demonstrates the magnitude of the risk is itself a technical and involved medical question over which the medical profession may be in disagreement.

We hold that the presiding Justice was correct in granting defendant's motion for judgment notwithstanding the verdict.[3]

The entry is:

Appeal denied.

Judgment affirmed.

ARCHIBALD and NICHOLS, JJ., did not sit.

---

[3] A case with almost identical facts is *Salinetro v. Nystrom*, 341 So.2d 1059 (Fla.App.1977). In a per curiam opinion, the court upheld the granting of a directed verdict for defendant, concluding that even assuming a duty to inquire there was no causal relationship between the lack of inquiry and the abortion since the plaintiff, as in the instant case, did not know she was pregnant.