**Michelle M. HAMOR**

v.

**MAINE COAST MEMORIAL HOSPITAL and Robert Walker, M.D.**

Supreme Judicial Court of Maine.

Argued Jan. 17, 1984.

Decided Oct. 31, 1984.

Silsby & Silsby, Sandra Hylander Collier (orally), William S. Silsby, Jr., Ellsworth, for plaintiff.

Gross, Minsky, Mogul & Singal, P.A., George Z. Singal (orally), Bangor, for MCMH.

Vafiades, Brountas & Kominsky, Lewis V. Vafiades, Jeffrey L. Hjelm (orally), Bangor, for Robert Walker, M.D.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN, and SCOLNIK, JJ.

ROBERTS, Justice.

Michelle M. Hamor appeals a judgment in favor of defendant Maine Coast Memorial Hospital based upon a directed verdict, and a judgment in favor of defendant Rob-

ert Walker based upon a jury verdict, in the Superior Court, Hancock County. On appeal she argues that the court committed error (1) in denying her second motion to amend her complaint; (2) in three of its evidentiary rulings; (3) in refusing to give certain jury instructions requested by the plaintiff; and (4) in entering a directed verdict in favor of the hospital. We affirm both judgments.

## I.

From January through early March, 1978, Michelle Hamor was under the care of Robert Walker, M.D., an obstetrician/gynecologist, for her pregnancy. She had complained of abdominal pressure and pain, for which Walker had prescribed medication for morning sickness. On March 9, when she was in the 23rd or 24th week of her pregnancy, Hamor experienced a sudden fluid emission and loss of abdominal pressure. Fearing a ruptured membrane, she consulted Walker, who placed her under observation at the defendant hospital. She was discharged on March 11 when no clinical signs of infection were found. On March 13, however, Hamor informed Dr. Walker that her symptoms were continuing. Following an office examination, Walker advised Hamor that she had incurred an infection, and that for her safety the pregnancy would have to be terminated.

She was thereupon readmitted to the hospital, where she was administered drugs to induce artificial labor. When the fetus started to appear, it was in the breech position. A nurse attending the procedure phoned Dr. Walker at his home and the doctor, without giving additional instructions, left immediately for the hospital. Shortly before Walker arrived, the fetus was delivered, and it lived for approximately six minutes outside the womb before dying of asphyxiation, due to its prematurity. Hamor claims that, following her re-

lease from the hospital, she suffered both physical and mental impairment, and that she incurred medical and hospital expenses as well as lost wages.

Hamor brought suit against the hospital and Dr. Walker, charging them with negligence in their care of Hamor throughout the pregnancy termination procedure. She later succeeded in amending her complaint to allege that Walker had breached his duty to inform her of alternative courses of treatment, and of the reasonably foreseeable risks inherent in the treatment prescribed. Two weeks before the scheduled trial, Hamor again moved to amend her complaint by adding counts against each defendant for her mental distress as a result of their negligent failure to administer treatment to her live-born infant. This motion was denied. The first trial then ended in a mistrial, following plaintiff's opening statement.[1] A second trial resulted in a directed verdict for the hospital, and in a jury verdict in favor of Dr. Walker on all three counts of the complaint.

## II.

■ We turn first to the court's denial of Hamor's second motion to amend her complaint. Leave to amend under Rule 15 "shall be freely given when justice so requires." M.R.Civ. P. 15(a). Nevertheless, "[a] motion to amend a pleading pursuant to Rule 15 is committed to the sound discretion of the trial court, and '[o]ne seeking to overturn the denial of leave to amend ... must demonstrate a clear and manifest abuse of that discretion and must demonstrate that granting such motion is necessary to prevent injustice.' " *Bangor Motor Co. v. Chapman*, 452 A.2d 389, 392 (Me. 1982) (quoting *Poulette v. Herbert C. Haynes, Inc.*, 347 A.2d 596, 598 (Me.1975)). In the case at bar, the imminence of the scheduled trial at the time the motion to amend was filed was by itself sufficient justification for denial of the motion. The

1. Although the first trial ended in a mistrial, the motion to amend the complaint was not subsequently renewed.

court was well within its discretion in denying plaintiff's eleventh-hour attempt to adjust her pleadings. Plaintiff was free, at any point subsequent to the mistrial, to renew her motion, but elected not to do so.

## III.

■ While giving testimony at the trial, Dr. Walker was asked whether he had discussed the proposed procedure with Michelle Hamor prior to her admission to the hospital. He stated that he had. Counsel then asked, "And from your conversation with [the plaintiff], did it become apparent to you that she knew she was being admitted to have a termination of the pregnancy?" Over objections by plaintiff's counsel, Walker replied, "I felt she understood what was going on and that she was agreeable to the treatment that I had outlined." Hamor argues that the court erred in failing to exclude this testimony, because the issue of informed consent was a principal element of the plaintiff's case. We agree that the extent of plaintiff's knowledge was a question of fact for the jury, but the testimony by Walker regarding his own perception of the plaintiff's knowledge prior to admitting her to the hospital was relevant to the issue of his alleged negligence. We find no abuse of discretion by the presiding justice in admitting this testimony.[2]

■ Hamor testified at the trial about an earlier abortion performed by Dr. Walker in 1975. When asked, at a later point, to recount her reactions to that abortion, the court granted a motion by defense counsel to exclude the testimony. Hamor now contends that this testimony bore directly upon the issue of informed consent. Rule 403 of the Maine Rules of Evidence, however, provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues ... or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The discre-

tion of the presiding justice under this rule is "very broad." Field & Murray, *Maine Evidence* § 403.1 at 59 (1976). It is his duty to make sure that the trial is conducted in an orderly manner so as to see that the jury is not distracted by collateral matters or testimony too remote or speculative to aid in determining where the truth lies." *Id.* at 60. The court was well within its discretion in excluding the proffered testimony under Rule 403.

■ At a different juncture in her testimony, Hamor recounted a conversation she had had with some nurses during which she asked that every effort be made to save her baby. At the request of defense counsel, the court instructed the jury to consider that conversation only in relation to the alleged liability of the hospital. Hamor now contends that this was error, for the conversation would have been relevant to Walker's liability had the jury found an agency relationship between Walker and the nurses on duty. The court was within its discretion in providing a limited instruction. Moreover, Hamor, at an earlier point in her testimony, stated that she had told Dr. Walker directly that she wanted every effort made to save the baby. The error, if any, was therefore harmless, *see* M.R. Civ.P. 61.

## IV.

■ Hamor also contends that the court erred in refusing to give two jury instructions requested by the plaintiff. As suggested by the plaintiff, the first instruction would have included in a negligence instruction a reference to "outrageous" conduct. We note, as an initial consideration, that the case against Dr. Walker was submitted to the jury in the form of special interrogatories pursuant to M.R.Civ.P. 49, and that Hamor did not object to the manner in which the issues were framed in the interrogatories. The use of the term "outrageous" in this context generated a confusing mixture of legal concepts. "A party

---

**2.** No issue has been raised concerning compliance with 22 M.R.S.A. § 1598 (1980).

does not have a right to a requested instruction unless it states the law correctly...." *Schneider v. Richardson,* 438 A.2d 896, 897 (Me.1981) (citing *Towle v. Aube,* 310 A.2d 259, 266 (Me.1973)).

Hamor also sought an instruction that contained a confusing mixture of the concept of vicarious liability for the negligence of the nurses with the concept of direct liability for failure to properly instruct the nurses. Hamor argues that this instruction was warranted because of the possibility of an agency relationship between Dr. Walker and the nurses. Once again the proposed instruction did not state the law correctly. Moreover, the court properly refused this instruction because the issue of negligence on the part of the nurses was rendered moot by the entry of a directed verdict in favor of the hospital. "A party does not have a right to a requested special instruction unless it ... appears to be supported by the facts of the case...." *Schneider,* 438 A.2d at 897. Because we decide that the entry of a directed verdict was not error, *see infra,* the Superior Court was correct in refusing to give the proposed instruction.

## V.

Hamor urges that the entry of a directed verdict in favor of the defendant hospital was error. She concedes that, as a general rule, a prima facie case of negligence in a medical malpractice suit can only be established by expert testimony, *see Cox v. Dela Cruz,* 406 A.2d 620, 622 (Me.1979), and that no such testimony was presented in the case at bar. She notes, however, that an exception will lie " 'where the negligence

and harmful results are sufficiently obvious as to lie within common knowledge.' " *Cox,* 406 A.2d at 622 (quoting *Cyr v. Giesen,* 150 Me. 248, 252, 108 A.2d 316, 318 (1954)). Citing *Mills v. Richardson,* 126 Me. 244, 137 A. 689 (1927), she argues that the standards for weighing hospital procedures and the conduct of nursing personnel are, in the circumstances of this case, within the ambit of common knowledge. We disagree.

The *Mills* case involved a nurse who, following the delivery of plaintiff's child, administered a douche which scalded the plaintiff. The Court concluded that expert testimony was not a prerequisite for establishing damage, since

[t]he treatment to be given Mrs. Mills was not a matter of "highly specialized art." It consisted of washing by water, hot but not too hot, containing a proportion of another liquid and flowing by gravity from a receptacle through a rubber tube with perforated nozzle. It did not require the services of a physician or of a trained nurse.

126 Me. at 248–49, 137 A. at 691. Other cases cited by plaintiff, involving equally egregious facts, are similarly inapposite.[3]

Hamor alleged that her injuries resulted from negligent care of her by the hospital and its staff. She presented no expert testimony, either on the breach of duty to her or on causation of her injuries. The propriety of the medical care administered to a patient during childbirth and therapeutic abortion procedures, determined as it is by rapid and highly technical advances in the medical art, is better established by expert testimony than by the

3. *See McKnight v. St. Francis Hospital and School of Nursing, Inc.,* 224 Kan. 632, 585 P.2d 984 (1978) (failure to consult patient's medical history before administering tests); *Orozco v. Henry Ford Hospital,* 408 Mich. 248, 290 N.W.2d 363 (1980) (evidence of damaged testicle coupled with admission of statement by surgeon, made during operation, of "oops, I cut in the wrong place"); *see also Inderbitzen v. Lane Hospital,* 124 Cal.App. 462, 12 P.2d 744 (1932) (patient infected during childbirth procedure when some 10–12 unlicensed medical students per-

formed rectal and vaginal examinations on her with unwashed hands); *Terhune v. Margaret Hague Maternity Hospital,* 63 N.J.Super. 106, 164 A.2d 75 (1960) (patient's face burned and inflamed by rash where rubber anesthetic mask had been placed during childbirth); *Jones v. Hawkes Hospital of Mt. Carmel,* 175 Ohio St. 503, 196 N.E.2d 592 (1964) (restless patient, under sedation during childbirth, injured by falling out of bed when left alone in delivery room for 2–5 minutes); cases cited in *Cox,* 406 A.2d at 622 n. 1.

collective wisdom of a lay jury. Similarly, the infection and "reactive and endogenous depression" allegedly suffered by Hamor bear no obvious causal relation to the actions of the hospital and its staff. Given the absence of expert testimony in the case at bar, we perceive no error in the entry of a directed verdict in favor of the defendant hospital.

The entry is:

Judgments affirmed.