TDW - Cuiv - 10/28 - v

Dalton v. Quinn, CV-07-58 (Superior Ct. Cumberland)

Now pending before the court are three motions. In the order they were filed, these are: (1) a motion for summary judgment on behalf of defendants Sweeney and Cardiovascular Consultants of Maine (collectively, "Sweeney"); (2) a motion by defendants Quinn and Maine Heart Surgical Associates (collectively, "Quinn") for reconsideration of the court's order dated August 14, 2009; and (3) a motion by plaintiff to further extend the time in which plaintiff may designate a expert to replace Dr. Freeman, who withdrew in June 2009.

## 1. Sweeney Motion for Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the Court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. E.g., Johnson v. McNeil, 2002 ME 99 ¶ 8, 800 A.2d 702, 704. The facts must be considered in the light most favorable to the non-moving party. Id. Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. Rodrigue v. Rodrigue, 1997 ME 99 ¶ 8, 694 A.2d 924, 926.

The primary basis for Dr. Sweeney's motion is that before Dr. Freeman withdrew as plaintiff's expert, Dr. Freeman had stated that he had no criticisms of Dr. Sweeney. As set forth below and in the court's orders dated May 28, 2009 and August 14, 2009, there has been a continuing dispute as to the circumstances of Dr. Freeman's withdrawal and whether plaintiff be one or more multiple extensions of time in which to name a replacement expert. However, the court previously ruled that if plaintiff's original expert had no criticisms of Dr. Sweeney – and that was the state of the record as of the close of discovery – plaintiff should not be entitled to use the occasion of Dr. Freeman's withdrawal in order to obtain a new expert for the purpose of opposing Dr. Sweeney's motion for summary judgment and reviving her case as against Dr. Sweeney. See August 14, 2009 order ¶1. Plaintiff was therefore ordered to file an opposition to Sweeney's motion for summary judgment.

The court has since reviewed the papers filed by the parties and concludes that plaintiff has not demonstrated the existence of any disputed issues for trial as to whether Dr. Sweeney departed from the applicable standard of care. While there are some minor factual disputes in the record and the court will accept plaintiff's version of the facts on those issues for purposes of summary judgment, there are no factual disputes which are material to whether Dr. Sweeney breached the relevant standard of care. See, e.g., Burdzel v. Sobus, 2000 ME 84 ¶6, 750 A.2d 573, 575 (factual dispute is "material" if it has the potential to affect the outcome of the suit). The absence of any dispute of material fact here is demonstrated by Dr. Freeman's testimony that he had no criticisms of Dr. Sweeney.

## 2. Motion for Reconsideration of August 14, 2009 Order

To the extent that Quinn seeks to have the court reconsider its August 14, 2009 order, that motion is denied. While it is true that plaintiff's counsel was on notice no later than August 12, 2008 that Dr. Freeman had reservations about testifying,[1] the emails and letters before the court indicate that, at least according to what Dr. Freeman told counsel for plaintiff, his reservations were based on his consulting agreement with Intuitive Corporation (the manufacturer of the device used for robotic surgery). From the emails and correspondence before the court it appears that in the late summer and early fall of 2008 counsel for plaintiff thought that the contractual concerns raised by Dr. Freeman had been overcome, and the court is not prepared to rule that plaintiff had any obligation to alert the court or opposing counsel to an issue that counsel for plaintiff believed had been resolved.

In addition, the court adheres to its view that while defense counsel has raised legitimate (and as yet unanswered) questions as to Dr. Freeman's qualifications, plaintiff should not automatically be foreclosed from attempting to obtain a new expert in the absence of evidence that plaintiff or her counsel knew or should have known that Dr. Freeman was exaggerating his qualifications.

The court is not overlooking the fact that in an effort to keep Dr. Freeman on board, plaintiff contended that the discovery sought by defendant Quinn, which the court found to be justified, was unwarranted harassment. Indeed, the argument advanced by plaintiff at the time – that the court should preclude the discovery sought by Quinn in order to allow plaintiff to keep Dr. Freeman as plaintiff's expert – was somewhat disquieting. The court has considered those issues but adheres to its August 14 order.

There still remains a dispute as to whether plaintiff has fully complied with the discovery provisions set forth in the August 14 order. At this point, the court will order that counsel for plaintiff certify under oath (1) whether all of the records required to be produced under the August 14 order have in fact been produced and (2) whether, to the knowledge of counsel for plaintiff, there previously existed additional electronic or written communications with Dr. Freeman that are no longer in the possession or control of counsel for plaintiff.

## 3. Plaintiff's September 14, 2009 Motion to Enlarge

Contemporaneous with the issuance of the court's August 14 order, counsel for plaintiff advised the court by letter that plaintiff had located a new expert. In a motion dated September 14, 2009, however, plaintiff advised that the new expert had subsequently changed his mind and declined to participate. According to emails attached to plaintiff's motion, the reason given for this decision was that the new doctor

---

[1] Freeman's email of August 12, 2008 in fact demonstrates that the issue had been raised earlier ("as was discussed before, it my be better for you to identify another expert now rather than later") (emphasis added).

2

was unwilling to proceed in the absence of written documentation from Intuitive Corporation that he would not be violating any contractual policy in serving as an expert witness in the case.[2] According to plaintiff, Intuitive has been unwilling to commit itself on this issue.

In light of Dr. Freeman's withdrawal on early June, plaintiff had previously requested an extension to September 30, 2009 to name a new expert. The court has never finally ruled on that request. See August 14 order. Plaintiff's September 14 order sought an additional extension. The amount of the extension sought is not spelled out in plaintiff's motion but the draft order submitted by plaintiff would extend the deadline for 90 additional days from the date of the order.

Plaintiff's motion for an extension seeks to frame the issue as whether a discovery sanction should be imposed upon the plaintiff. In the court's view, the issue is whether plaintiff has demonstrated good cause for a further significant extension when plaintiff has already been given considerable leeway. In this connection, the court would note that the original deadline for plaintiff to designate an expert was December 19, 2008. The original discovery deadline was May 19, 2009. Accepting that plaintiff believed that the contractual issues raised by Dr. Freeman had been resolved in the late summer or early fall of 2008, plaintiff nevertheless knew as of April 2009 that Dr. Freeman wanted to withdraw. As noted above, plaintiff then devoted considerable time and effort to an unsuccessful effort to persuade the court that the discovery sought from Dr. Freeman constituted "harassment" and did so without initially disclosing that Dr. Freeman had at various time given additional reasons for his desire to withdraw.

In its August 14 order, the court suggested that if plaintiff was to be given any extension, it was unlikely that any extension would be given beyond September 14. Although counsel for plaintiff thought a new expert had been found, that did not happen, and September 14 has come and gone. An extension to September 14 would have given plaintiff almost 120 days beyond the discovery deadline and more than 90 days after Dr. Freeman's withdrawal to find a substitute. More than 30 additional days have passed, and plaintiff has now had more than 120 days after Dr. Freeman's withdrawal in which to find a new expert. No new expert has been proffered.

This case was on a trial list when Dr. Freeman withdrew. A new expert at this point would send this case back to the drawing board as far as experts are concerned and would inevitably lead to a deposition of the new expert, further expert consultation and/or a further expert designation by the defense, possibly further discovery all around, and no possibility of trial until sometime in 2010. The other parties to this litigation are entitled to have this case brought to trial or otherwise resolved and not to have the case remain in a state of suspended animation while plaintiff seeks extension after extension. At some point this process has to end. The court does not find good cause for a further extension.

---

[2] The doctor wrote that he did not believe he was under any contractual arrangement with Intuitive but had worked with the Intuitive equipment for 8-9 years and wanted to make sure that there was nothing he had overlooked.

This conclusion is not altered by the fact that two doctors have declined to serve as experts allegedly based, in whole or in part, on concerns about contractual issues with Intuitive Corp. Whether or not any Intuitive contracts actually present obstacles, whether the potential experts in question are overly skittish, or whether Intuitive contracts are being offered as excuses and the experts in question actually have other reasons for declining to participate, this case is far advanced and plaintiff has already been given leeway.

The entry shall be:

The motion for summary judgment by defendants Sweeney and Cardiovascular Consultants of Maine is granted, and the complaint dismissed as against Sweeney and Cardiovascular Consultants. The motion by defendants Quinn and Maine Heart Surgical Associates for reconsideration of the court's order dated August 14, 2009 is denied. Counsel for plaintiff shall certify under oath (1) whether all of the records required to be produced under the August 14 order have in fact been produced and (2) whether, to the knowledge of counsel for plaintiff, there ever existed additional electronic or written communications with Dr. Freeman that are no longer in the possession or control of counsel for plaintiff. Plaintiff's most recent motion for a further extension of time in which to name a replacement expert is also denied.

The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: October __2.3__ , 2009

Thomas D. Warren
Justice, Superior Court

4

10/26/2009    MAINE JUDICIAL INFORMATION SYSTEM   dcvnaugh
        CUMBERLAND COUNTY SUPERIOR COURT   mjxxi013
        PAGE A - ATTORNEY BY CASE VIEW
MERILYN A DALTON ET ALS VS REED D QUINN MD ET ALS
UTN:AOCSsr  -2007-0011752      CASE #:PORSC-CV-2007-00058

-----------------------------------------------------------------------

| SEL VD | REPRESENTATION TYPE | DATE |
|---|---|---|

06 0000008462 ATTORNEY:FLYNN, JOHN P III
ADDR:39 PORTLAND PIER PO BOX 4803 PORTLAND ME 04112

| | | |
|---|---|---|
| F FOR:ROBERT DALTON | MNR CHILD  RTND | 02/13/2009 |
| F FOR:DIANE DALTON | MNR CHILD  RTND | 02/13/2009 |
| F FOR:MERILYN A DALTON | PR  RTND | 02/13/2009 |

02 0000001195 ATTORNEY:LAVOIE, MARK
ADDR:415 CONGRESS STREET PO BOX 4600 PORTLAND ME 04112-4600

| | | |
|---|---|---|
| F FOR:REED D QUINN, MD | DEF  RTND | 03/05/2007 |
| F FOR:MAINE HEART SURGICAL ASSOCIATES | DEF  RTND | 03/05/2007 |

04 0000006878 ATTORNEY:MARTEMUCCI, JAMES
ADDR:43 DEERING STREET PORTLAND ME 04101

| | | |
|---|---|---|
| F FOR:MAINE MEDICAL CENTER | DEF  RTND | 02/10/2009 |

05 0000000169 ATTORNEY:NYHAN, CHRISTOPHER
ADDR:ONE CITY CENTER PO BOX 9546 PORTLAND ME 04112-9546

| | | |
|---|---|---|
| F FOR:PAUL W SWEENEY MD DIS. 10-23-09 | DEF  RTND | 02/20/2007 |

| SEL VD | REPRESENTATION TYPE | DATE |
|---|---|---|

05 0000000169 ATTORNEY:NYHAN, CHRISTOPHER
ADDR:ONE CITY CENTER PO BOX 9546 PORTLAND ME 04112-9546

| | | |
|---|---|---|
| F FOR:CARDIOVASCULAR CONSULTANTS OF ME PA DIS | DEF  RTND | 02/20/2007 |

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-07-58
TDW - CUM - 2/8 /2010

MERILYN A. DALTON, individually
and as Personal Representative of the
ESTATE OF KEVIN S. DALTON,

Plaintiff,

v.

REED QUINN M.D., et al.,

Defendants.

STATE OF MAINE Office
Cumberland, ss., Clerk's
ORDER SUPERIOR COURT

Feb 0 5 2010

RECEIVED

Before the court is a motion by defendants Reed Quinn M.D. and Maine Heart Surgical Associates (collectively, "Quinn") for summary judgment. Because plaintiff Merilyn Dalton's claim against Maine Medical Center is based on the allegation that Maine Medical Center is vicariously liable for the actions of Dr. Quinn, an entry of summary judgment on behalf of Dr. Quinn will also result in an entry of summary judgment in favor of Maine Medical Center.

The general standard for determining whether summary judgment should be granted is well settled and is recited in this court's October 23, 2009 order which granted summary judgment to defendants Paul Sweeney and Cardiovascular Consultants of Maine.[1] In this case, whether summary judgment should be granted

---

[1] Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. E.g., *Johnson v. McNeil*, 2002 ME 99 ¶ 8, 800 A.2d 702, 704. The facts must be considered in the light most favorable to the non-moving party. *Id.* Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Rodrigue v. Rodrigue*, 1997 ME 99 ¶ 8, 694 A.2d 924, 926.

depends on whether the deposition testimony of Dr. Richard Freeman – which plaintiff has offered in opposition to summary judgment and which plaintiff proposes to offer at trial – is admissible.

The summary judgment rule requires that the evidence offered in support of and in opposition to a summary judgment motion must be admissible in evidence. *See* M.R.Civ.P. 56(e); *Windham Land Trust v. Jeffords*, 2009 ME 29 ¶ 34, 967 A.2d 690, 700. Ordinarily, affidavits and deposition testimony, which would be hearsay at a trial, are considered admissible for purposes of summary judgment. *See, e.g.*, M.R.Civ.P. 56(c), (e). To consider Dr. Freeman's deposition for purposes of summary judgment in this case, however, would only postpone the real dispute between the parties – whether plaintiff would be allowed to offer that deposition as evidence at trial.

At a hearing on December 3, 2009, counsel for plaintiff and counsel for defendants agreed that the court could and should consider whether Dr. Freeman's deposition would be admissible at trial in deciding the instant motion and counsel for plaintiff did not appear to dispute that summary judgment for Quinn should be granted if the deposition testimony of Dr. Freeman would not be admitted at trial.[2] Counsel also agreed that they had fully briefed and argued the issue of the admissibility of Dr. Freeman's deposition in their summary judgment papers and their arguments.

---

[2] This follows from the principle that except in cases where medical malpractice would be sufficiently obvious to a lay person, a plaintiff in a medical malpractice case must offer expert medical testimony to establish the appropriate standard of medical care, the existence of a departure from that standard of care, and causation. *E.g.*, *Cox v. Dela Cruz*, 406 A.2d 620, 622 (Me. 1979). In this case Dr. Freeman was the only expert that plaintiffs have designated with respect to medical issues, and no contention has been made that the alleged malpractice would have been sufficiently obvious as to be within common knowledge.

<u>Dr. Freeman's Withdrawal as Plaintiff's Expert</u>

The background facts relating to Dr. Freeman's role in this case are set forth at length in the record and in this court's orders dated May 28, August 14, and October 23, 2009. In particular, the events leading to Dr. Freeman's decision to withdraw as plaintiff's expert are set forth in the May 28, 2009 order. The facts set forth on pages 1-3 of that order are documented in the court's file and in correspondence and emails that were submitted in connection with a hearing held on May 21, 2009.[3] Certain of the emails and correspondence were originally submitted by plaintiff under seal, but, as set forth on the record on May 21, the court unsealed those documents at the hearing. For purposes of the present motion, the pertinent facts may be summarized as follows:

Dr. Freeman was deposed in March 2008, prior to the panel hearing in this case. Asked how many robotic mitral valve repairs he had performed, he answered, "I think we're in the high 40's." Asked about his use of "we," he testified that he and another surgeon, Dr. Robison, had done the repairs as "co-surgeons." He also testified that he did not keep any kind of surgical log and therefore could not be precise about the number of surgeries he had performed or participated in. Freeman Deposition at 11, 53, 57.

Counsel for Dr. Quinn thereafter demonstrated to the court that there were significant questions with respect to Dr. Freeman's deposition testimony and qualifications as an expert in robotic mitral valve surgery. First, Dr. Freeman was listed as a thoracic surgeon, rather than a cardiac surgeon, both by CorVasc (Dr. Freeman's physician practice group) and by St. Vincent's Hospital, where he testified he

---

[3] In the court's May 28 order, the date of the hearing is incorrectly identified at one point as having occurred on April 21 rather than May 21.

3

performed the majority of his surgeries.[4] Second, the defense's expert witness, Dr. Murphy, advised defense counsel that Dr. Freeman was not a member of the relatively small group of surgeons who perform robotic mitral valve repairs. Third, the defense represented that Dr. Robison – who Dr. Freeman had described as his "co-surgeon" – had told Dr. Murphy that Dr. Robison was the only surgeon performing robotic mitral valve repairs at CorVasc. The record also contains an email from a vice president of St. Vincent's Hospital that the surgeon who specializes in robotic mitral valve repair at St. Vincent's is Dr. Robison. Asked if Dr. Freeman also performs those surgeries, the hospital responded that Dr. Freeman's specialty was "non-cardiac thoracic."[5] Finally, an email to CorVasc in April 2008 inquiring which of CorVasc's surgeons performs robotic mitral valve repair yielded an email response that Dr. Robison "is the surgeon that does this procedure."[6]

This information caused counsel for Quinn to undertake various efforts to obtain additional information as to Dr. Freeman's credentials and experience with robotic mitral valve repair. Those efforts and their results are outlined in the court's May 28, 2009 order. In May 2008 counsel for Quinn requested documentation from St. Vincent's Hospital as to the number of times Dr. Freeman had performed robotic mitral valve repairs at that hospital. An email exchange contained in the record suggests that the

---

[4] *See* Exhibit H to Defendant Quinn's Opposition dated May 19, 2009 to Plaintiff's Motion for Reconsideration of April 27, 2009 order; Freeman Deposition at 20.

[5] Emails: Cisco to Wuestoff April 16, 2008 1:57 p.m. and April 24, 2008 1:3? p.m. attached as Exhibit G to Defendant Quinn's Opposition dated May 19, 2009 to Plaintiff's Motion for Reconsideration of April 27, 2009 order.

[6] Email: Tromble to Wuestoff April 25, 2008 9:28 a.m., attached as Exhibit F to Defendant Quinn's Opposition dated May 19, 2009 to Plaintiff's Motion for Reconsideration of April 27, 2009 order.

4

hospital was able to provide that information but that Dr. Freeman had declined to authorize the hospital to release that information.[7]

By the spring of 2009, counsel for Quinn had not received further information it had requested from counsel for plaintiff with respect to Dr. Freeman's credentials and experience and began efforts to subpoena St. Vincent's Hospital and arrange for a deposition of Dr. Robison. As recounted in the May 28, 2009 order, Dr. Freeman thereafter sent a letter dated April 1, 2009 to plaintiff's counsel stating that effective immediately he would no longer serve as an expert witness for plaintiff. In that letter Dr. Freeman complained both that he believed he was being harassed by defense counsel and that he thought his relationship with plaintiff's counsel had been irreparably damaged, noting that he had sought to withdraw earlier.[8]

Dr. Freeman's April 1 letter led to further maneuvering rather than his immediate withdrawal. Subsequently, however, the court was provided with a letter dated May 18, 2009 in which Dr. Freeman again announced his immediate withdrawal. This letter, unlike its predecessor, cited only the efforts of Dr. Quinn's counsel – described as "bordering on harassment" – as the primary reason for withdrawal. Notwithstanding the unequivocal tone of that letter, plaintiff's counsel informed the court at the May 21 hearing that Dr. Freeman would reconsider if he were protected from the discovery sought by Dr. Quinn.

In its May 28 order the court found that, contrary to the arguments offered by Dr. Freeman and counsel for plaintiff, Dr. Quinn was entitled to pursue the discovery it was

---

[7] Emails dated May 8, 2008 attached as Exhibit A to May 19, 2009 affidavit of Jennifer Rush, Esq.

[8] Exhibit B to Plaintiff's Reply dated June 22, 2009 to Defendant's Opposition to Motion to Extend Discovery Deadline. The record contains evidence in the form of an August 12, 2008 email that Dr. Freeman, citing contractual issues, had previously broached the possibility of withdrawing as plaintiff's expert sometime prior to August 12, 2008.

5

seeking with respect to the experience and qualifications of Dr. Freeman. *See* May 28, 2009 order at 3-4. Dr. Freeman then withdrew – this time for good.

Thereafter, plaintiff sought an extension of time in which to obtain a new expert. As set forth in the court's order dated August 14, 2009, the court indicated that it would grant such an extension – unless there were evidence that plaintiff's counsel knew or should have known that Dr. Freeman did not possess the qualifications or experience that he claimed. In its August 14 order the court noted, however, that it was unlikely that any extension would be granted beyond September 14, 2009.

Subsequently, as set forth in the court's October 23, 2009 order, plaintiff reported that her efforts to obtain a new expert had been unsuccessful and sought a second extension of time to designate another expert. No replacement had been found by October 23, and at that time the court determined that no further extension would be allowed.

Discussion

There are at least three salient factors that dictate the result in this case. The first is that Dr. Freeman has withdrawn of his own accord and not because of circumstances beyond his control. This might be a different case if an expert had withdrawn because of illness, injury, or other emergency – at least so long as opposing counsel had an adequate opportunity to explore the expert's qualifications and offer any available impeachment of the expert's testimony.

Second, taking him at his word, Dr. Freeman's withdrawal was occasioned, at least in part, because he was unwilling to subject himself to discovery that this court approved. The court has no choice but to disagree with the proposition that an expert

witness can unilaterally set the terms under which he is willing to participate in a case and can unilaterally limit discovery as to his qualifications and experience.

Although the above considerations would probably be sufficient to conclude that Dr. Freeman's deposition testimony is inadmissible, there is a third factor that is also dispositive. Counsel for Dr. Quinn has still not had an adequate opportunity to undertake discovery as to Dr. Freeman's credentials and to explore whether his withdrawal was occasioned by reluctance to subject his qualifications to scrutiny or for some other reason. As noted in the court's August 14, 2009 order, there are a number of possible reasons why Dr. Freeman withdrew but one of those possible reasons is that his statements as to his robotic mitral valve experience would not be substantiated upon further investigation. Dr. Quinn has demonstrated that there are, at minimum, significant questions with respect to Dr. Freeman's qualifications. Those questions remain unresolved, and the court sees no appreciable likelihood that they can be resolved in view of Dr. Freeman's withdrawal and his resistance to discovery.

By way of example, as set forth above, the emails to and from St. Vincent's Hospital suggest that St. Vincent's has documentation as to the number of any robotic mitral valve repairs that Dr. Freeman performed at that hospital. St. Vincent's has declined to release that information without Dr. Freeman's authorization, and Dr. Quinn's attempt to obtain that information through legal process in Indiana was opposed by Dr. Freeman and has been rejected by an Indiana court. *See* Exhibit C to Plaintiff's Statement of Material Facts dated November 23, 2009.[9]

---

[9] Some of the information sought by Dr. Quinn may be information protected by an Indiana Peer Review statute. With respect to a simple total of any robotic mitral valve repairs performed by Dr. Freeman (without any evaluation of his actions and without any patient – identifying information), the court does not perceive any privacy or other confidentiality issues that would legitimately prevent disclosure. At a minimum, if Dr. Freeman were to seek to

7

Similarly, whether Dr. Robison would confirm or deny that Dr. Freeman has performed robotic mitral valve repairs, as a "co-surgeon" or otherwise, is a legitimate subject for inquiry – as the court ruled in its May 28, 2009 order. Indeed, sworn testimony from Dr. Robison could resolve many of the questions that have been raised. Dr. Robison, however, has declined to be deposed and obtained an order from Indiana court directing Dr. Quinn to cease all discovery directed to Dr. Robison and CorVasc. Exhibit C to Plaintiff's Statement of Material Facts dated November 23, 2009.

The Indiana court's order appears to leave an opening for plaintiff (Merilyn Dalton) to revisit the issue and seek further discovery from Dr. Freeman but leaves no such opening for Dr. Quinn. The Indiana court's order is even less hospitable to permitting discovery from St. Vincent's, CorVasc, or Dr. Robison. It suggests that such discovery might only be available if the information could not be obtained from Dr. Freeman. *Id.*[10]

Under the circumstances in this case, before Dr. Freeman's testimony would be admissible at the trial in this case, Dr. Quinn is entitled to discovery to see if Dr. Freeman's robotic mitral valve experience is substantiated. At this point, however, the court cannot legitimately require Dr. Quinn (who is not the proponent of Dr. Freeman's testimony) to make further efforts in Indiana to secure the discovery he seeks when his efforts to date have met with fierce resistance from Dr. Freeman and the other relevant sources of information in Indiana and where that resistance has been upheld by the

---

appear to testify in person, the court would condition the admissibility of his testimony upon his authorization to release this information.

[10] On its face, this suggests that if Dr. Freeman testifies as to the number of robotic mitral valve repairs he has performed, Dr. Quinn would be precluded from asking the person Dr. Freeman testified was his "co-surgeon" to confirm Dr. Freeman's account.

Indiana courts.[11] This dispute has already required the removal of this case from two trial lists, and requiring further proceedings based on the unlikely possibility that Dr. Quinn could somehow obtain the necessary discovery he has thus far been denied would require missing a third trial list.

In addition, even assuming that Dr. Quinn could succeed in obtaining the requested discovery, if there remained a significant question as to Dr. Freeman's credibility, Dr. Quinn would be disadvantaged if Dr. Freeman were not present at trial so that the jury could judge his credibility in person. The court should emphasize that it is not making any ultimate determination as to Dr. Freeman's qualifications, experience or credibility. It is unable to do so on the present record because Dr. Quinn has been denied discovery.

The court also knows that because plaintiff has been unable to find a substitute expert, this ruling has the effect of terminating the case. However, the court would make the same ruling if similar questions had been raised as to a defense expert and sees no alternative but to determine that Dr. Freeman's deposition testimony cannot be admitted at trial. It therefore grants summary judgment to defendant Quinn. As noted above, this also mandates summary judgment in favor of Maine Medical Center.

The entry shall be:

The motions for summary judgment by defendants Reed Quinn, Maine Heart Surgical Associates, and Maine Medical Center are granted and summary judgment is

---

[11] This case exemplifies a problem that exists when experts from other jurisdictions are retained, and disputes with respect to those experts must be litigated before courts in those other jurisdictions. It is this court's respectful view that, where this case is being tried in Maine, issues as to the appropriateness and relevance of expert discovery should be decided by this court rather than by an Indiana court. In large part, this problem ultimately goes back to Dr. Freeman's decision to withdraw. If he were not resisting discovery, it is doubtful that the Indiana courts would need to be involved.

entered in their favor and against plaintiff. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATED:     February _5_, 2010

Thomas D. Warren
Justice, Superior Court

| 03 | 0000001870 | :LILLEY, DANIEL | | | | |
|---|---|---|---|---|---|---|
| | 39 PORTLAND PIER PO BOX 4803 PORTLAND ME 04112 | | | | | |
| F | KEVIN S DALTON-ESTATE | | PL | RTND | 02/01/2007 |
| | | | | W/DRWN | 02/13/2009 |

| 04 | 0000006878 | :MARTEMUCCI, JAMES | | | | |
|---|---|---|---|---|---|---|
| | 43 DEERING STREET PORTLAND ME 04101 | | | | | |
| F | MAINE MEDICAL CENTER-SJ | | DEF | RTND | 02/10/2009 |

| 05 | 0000000169 | ..NYHAN, CHRISTOPHER | | | | |
|---|---|---|---|---|---|---|
| | ONE CITY CENTER PO BOX 9546 PORTLAND ME 04112-9546 | | | | | |
| F | PAUL W SWEENEY MD DIS. 10-23-09 | | DEF | RTND | 02/20/2007 |

MERILYN A DALTON ET ALS VS REED D QUINN MD ET ALS

UTN:AOCSsr  -2007-0011752                          CASE #:PORSC-CV-2007-00058

---

01 0000001069           HARVEY, CHARLES
_____
      PO BOX 126 PORTLAND ME 04112-0126
      F    MAINE MEDICAL CENTER-SJ                    DEF      RTND   02/15/2007
                                                               W/DRWN 02/10/2009


02 0000001195        Y:LAVOIE, MARK
      415 CONGRESS STREET PO BOX 4600 PORTLAND ME 04112-4600
      F    REED D QUINN-SJ, MD                         DEF      RTND   03/05/2007
      F    MAINE HEART SURGICAL ASSOCIATES-SJ          DEF      RTND   03/05/2007